A98A0621. McEACHERN et al. v. MULDOVAN.
A98A0622. McEACHERN et al. v. GRAHAM.
(505 SE2d 495)

JOHNSON, Presiding Judge.

This is an appeal from the grant of summary judgment to defendants Michael Muldovan and Benjamin Graham. The plaintiffs are Marie McEachern and Paul Michael McEachern, the parents of the decedent Michael McEachern, individually, and Marie McEachern as temporary administratrix of the estate of the decedent. For the reasons discussed below, the grant of summary judgment as to intentional tort and wilful and wanton conduct counts in Case No. A98A0621 must be reversed. The grant of summary judgment in Case No. A98A0622 also must be reversed because there exists a genuine issue of material fact as to issues of foreseeability and remoteness. The grant of summary judgment to Muldovan as to the negligence counts in Case No. A98A0621 is affirmed.

Defendant Michael Muldovan and Michael McEachern (McEachern) were best friends. One evening, these two seventeen-year-olds and others gathered at the home of a friend. Muldovan and McEachern, along with other teenagers present, were drinking alcoholic beverages. During the evening, McEachern and others left the residence to obtain more alcoholic beverages and returned with still more friends.

McEachern possessed a handgun that evening which previously had been sold by Graham to Muldovan, a minor. He was showing it, pointing it, and operating its mechanism in the presence of the others. This conduct occurred before McEachern left the residence, while he was away from the residence, and again upon his return to the residence. His conduct was apparently such that several teenagers became concerned about the manner in which he was handling the handgun.

During the trip for more alcohol, a temporary stop was made at another residence where McEachern showed the handgun to Stephanie Cronin. Cronin was initially frightened by the handgun but became reassured when McEachern told her it was not loaded and

that the bullets were in his pocket. After returning to the gathering, McEachern took out the handgun and started pulling the hammer back —pointing it at different people and objects and snapping the trigger. Cronin again expressed her concerns to McEachern, and he again told her there were no bullets in the handgun. Cronin grabbed the handgun and ran outside. McEachern followed and regained possession of the handgun. Both Cronin and Muldovan told McEachern to put the handgun away because he was scaring people.

Some time later, Cronin, Muldovan, McEachern and two other teenagers sat around a small kitchen table in the residence. McEachern again displayed the handgun. He and Muldovan began to pass it back and forth, pointing it at each other and snapping the trigger. McEachern would load and unload the handgun. Cronin again expressed concern about how the handgun was being handled, and Muldovan opened the chamber to show her that it was not loaded.

McEachern left the table with the handgun tucked in his waist and the bullets in his pocket. When he returned, he loaded the handgun, pointed it at Muldovan's head and pulled the trigger. There is conflicting evidence whether Muldovan saw McEachern put a bullet in the chamber of the handgun. McEachern handed the handgun to Muldovan who pointed the handgun at him and pulled the trigger. McEachern told Muldovan to do it again. When Muldovan pulled the trigger again, the handgun fired, fatally wounding McEachern.

This action for damages arises from the death by gunshot wound of Michael McEachern. The amended complaint alleges that Muldovan fired the fatal shot and states claims against him based on negligence, the intentional tort of battery, and wanton and reckless conduct. Claims are asserted against Benjamin Graham based on negligence and wanton and reckless conduct by furnishing a pistol to a minor. These appeals are taken only from the grant of summary judgment to Muldovan, Case No. A98A0621, and Graham, Case No. A98A0622.

1. "Perhaps more than any other branch of the law, the law of torts is a battleground of social theory. Its primary purpose, of course, is to make a fair adjustment of the conflicting claims of the litigating parties. . . . The influence of public policy on tort law is apparent, and most likely to be controversial, when it comes to bear upon a proposed change that is accomplished by overruling an established precedent." Prosser & Keeton, Law of Torts (5th ed.), Introduction, Policy & Process, pp. 15-16, § 3. Society has an interest in the outcome of cases: first, in having a single dispute between individuals resolved in a fair and timely manner; and secondly, because of the system of precedent on which the entire common law is based. Id. at p. 16. "Under this system, a rule once laid down is to be followed until the courts find good reason to depart from it." Id. Accordingly, courts

should "make a conscious effort to direct the law along lines which will achieve a desirable social result, both for the present and for the future." Id. With this sage and long-standing principle in mind, we address the relevant issues under consideration in this case.

In Georgia, the doctrine of contributory negligence developed from two century-old statutes, now codified as OCGA §§ 46-8-291 and 51-11-7. OCGA § 51-11-7 (formerly Ga. Code Ann. § 105-603; Orig. Code 1863 § 2914) provides: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's *negligence,* he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." (Emphasis supplied.) OCGA § 51-11-7 historically has been interpreted as stating two different rules: one is the duty of a person to avoid injury to himself by the exercise of ordinary care, and the second provides for a recovery where the negligence of the plaintiff partially contributes to the injury. Editorial note to Ga. Code Ann. § 105-603. It is primarily from this statute that the doctrine of assumption of the risk evolved, after first being viewed as a special type of contributory negligence. See generally *Roberts v. King,* 102 Ga. App. 518, 521 (1) (116 SE2d 885) (1960); 57B AmJur2d, Negligence, §§ 1377-1378. Georgia still follows the traditional view that assumption of risk is a separate defense from comparative negligence which, when applicable, exculpates the defendant. Id. at § 1380.

"The affirmative defense of assumption of the risk bars a plaintiff from recovering on a *negligence* claim if it is established that he[,] without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.

"Knowledge of the risk is the watchword of assumption of risk and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. . . . In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from *a known risk arising from what the defendant is to do or leave undone.*" (Citations and punctuation omitted; emphasis in original and supplied.) *Vaughn v. Pleasant,* 266 Ga. 862, 864 (1) (471 SE2d 866) (1996). "Assumption of risk in its simplest and pri-

mary sense means that the plaintiff has given his express consent to relieve the defendant of an obligation of conduct toward him and to take his chance of injury from a known risk. The result is that the defendant is simply under no legal duty to protect the plaintiff. A second, and closely related meaning, is that the plaintiff, with the knowledge of the risk has entered voluntarily into some relation with the defendant which necessarily involves it, and so is regarded for tacitly or impliedly agreeing to take his own chances. . . . [A]ssumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. The two may co-exist, or either may exist without the other. The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care." (Citation and punctuation omitted.) *Roberts*, supra at 521 (1).

While the doctrine of assumption of the risk was developing in this state, the totally separate concept of voluntary intoxication was being formulated based on entirely different legal and policy considerations. "The whole theory of negligence presupposes some uniform standard of behavior." Prosser & Keeton, supra at p. 173, § 32. In forging the requisite standard of conduct in negligence cases, mental capacity of the actor generally was an external consideration. " 'The law,' says Mr. Justice Holmes . . . , 'takes no account of the infinite varieties of temperament, intellect, and education which make the internal character of a given act so different in different men.' " Id. at p. 176, § 32. Thus, the law recognized very early that "[o]ne who becomes intoxicated is held thereafter to the same standard as if he were a sober person." Id. at p. 178, § 32. Two major public policy considerations supporting this rule are: (1) an excuse based on intoxication would be far too common and too easy to assert; and (2) drunkenness is so antisocial that one who indulges in it ought to be held to the consequences. Id. Thus, this Court has held: "If ordinary care under certain circumstances would require that a certain thing should be done, the requirement is binding on a man whether sober or drunk; and getting drunk will not relieve the person from that duty. To hold otherwise would be to put a premium upon drunkenness. [Cit.] A similar rule has been applied in holding that voluntary drunkenness furnishes no excuse for crime. If ordinary care is not the measure of diligence required in the particular case, what is said above is equally applicable to the degree of diligence which is required." *Powell v. Berry*, 145 Ga. 696, 699 (1) (89 SE 753) (1916).

These long-standing legal and policy considerations form the basis from which we must address the primary issues in this case.

2. The trial court erred in granting defendant Muldovan's motion for summary judgment as to the averred intentional tort of battery and as to averred claims based on Muldovan's wilful, wanton, and reckless conduct.

(a) We first address the question of whether the conduct of Michael McEachern may be deemed to have established the defense of contributory negligence as a matter of law to the asserted wilful and wanton and intentional torts. The answer is no. *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123, 126 (460 SE2d 824) (1995) (contributory negligence is not a bar to an intentional tort); *Intl. Assn. of &c. Iron Workers, Local 387 v. Moore*, 149 Ga. App. 431, 436 (11) (254 SE2d 438) (1979) (contributory negligence is not a defense to a wilful tort); see *Garrett v. NationsBank &c.*, 228 Ga. App. 114, 118 (491 SE2d 158) (1997).

(b) "Assumption of the risk is a defense to a negligence claim, not a defense to a claim that is predicated upon an intentional tort such as battery." *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264, 266 (2) (387 SE2d 593) (1989); *Terrell v. Hester*, 182 Ga. App. 160 (2) (355 SE2d 97) (1987) (tort of battery was an intentional one to which an application of OCGA § 51-11-7 and an assumption of risk charge were not appropriate); see *Intl. Assn. of &c. Iron Workers*, supra at 436 (11) (assault and battery claim; trial court did not err in refusing to give assumption of risk charge as contributory negligence is not a defense to an alleged wilful tort); *Barrow v. Ga. &c. Aggregate Co.*, 103 Ga. App. 704, 715 (11) (120 SE2d 636) (1961), overruled in part on other grounds, *OB-GYN Assoc. &c. v. Littleton*, 259 Ga. 663, 667 (386 SE2d 146) (1989); compare *Williams v. Knight*, 211 Ga. App. 420 (1) (439 SE2d 507) (1993) and *Hopkins v. First Union Bank &c.*, 193 Ga. App. 109, 111 (2) (a) (387 SE2d 144) (1989) holding that assumption of risk is not a valid defense "to intentional, wilful, or wanton and reckless torts"; see also *Harvey Freeman & Sons v. Stanley*, 259 Ga. 233, 234 (1) (378 SE2d 857) (1989) (Court of Appeals erred in holding assumption of risk statute had no bearing in the case because defendant owner was being negligent, although the manager and her husband were being sued for allegedly committing intentional torts).

There is some authority supporting a conclusion that plaintiff's assumption of the risk is a valid defense and will bar his or her cause of action even when there exists wilful and wanton misconduct on the part of the defendant. *Sewell v. Dixie Region Sports Car &c.*, 215 Ga. App. 611, 612 (1) (451 SE2d 489) (1994); *Newman v. Collins*, 186 Ga. App. 595, 596 (1) (a) (367 SE2d 866) (1988) (physical precedent only); *Roberts*, supra at 520 (1) and hn. In Adams & Adams, Ga. Law of Torts (1997 ed.), § 19-1, the authors likewise conclude that plaintiff's assumption of the risk will serve to bar his or her cause of action if

predicated upon acts of wilful and wanton misconduct but recognize that an assumption of risk defense is unavailable to bar a tort claim predicated upon an intentional act. The better view, however, is found in those authorities holding that assumption of the risk is *not* a valid defense and is *not* a bar in claims arising from wilful and wanton conduct. See generally *Williams v. Knight*, supra at 420 (1), and *Hopkins v. First Union Bank*, supra at 111 (2) (a), holding that assumption of risk is not a valid defense "to intentional, wilful, or wanton and reckless torts."

In our view, the holdings in *Williams*, supra, and *Hopkins*, supra, are more persuasive. First, it has long been recognized that wilful and wanton conduct is not a form of negligent conduct but is a separate and distinct degree of conduct that more closely equates to intentional conduct. "There is an element of intent, actual or imputed, in wilful and wanton conduct which removes such conduct from the range of conduct which may be termed negligent." (Punctuation omitted.) *Martin v. Gaither*, 219 Ga. App. 646, 652 (466 SE2d 621) (1995). Thus, reason dictates that the assumption of the risk doctrine would not be a valid defense and would not bar claims arising from wilful and wanton conduct. The result would, instead, be such as occurs when a claim arises from an intentional tort. Second, OCGA § 51-11-7 pertinently provides that a plaintiff is not entitled to recover when, by exercise of ordinary care, he could have avoided the consequences of the defendant's "negligence." If the legislature had intended plaintiff's assumption of the risk to preclude recovery when the defendant was engaged in the commission of an intentional tort or one involving wilful and wanton conduct, it could easily have so provided.

To the extent the trial court granted summary judgment to Muldovan as to the intentional tort claim of battery and as to claims based on Muldovan's averred wilful and wanton conduct, on the grounds that McEachern had assumed the risk, it erred, and that ruling must be reversed.

(c) In granting summary judgment in favor of Muldovan, the trial court concluded that McEachern "had actual knowledge of the danger presented by Muldovan pointing the [loaded] pistol at him and pulling the trigger, he understood and appreciated the risk and voluntarily exposed himself to that risk." In reaching this conclusion, the trial court, citing *Lawrence v. Edwards*, 128 Ga. App. 1, 2 (3) (195 SE2d 244) (1973), further determined that "[a]lthough the evidence establishes McEachern, at the time of the incident, was noticeably intoxicated 'the acts or conduct of one voluntarily drunk will be measured by the same rules as those applying to a sober person.'" Id.

It has been contended that *Lawrence*, supra, and the seminal case of *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665 (88 SE2d

6) (1955) have been implicitly overruled by the holding in *Vaughn v. Pleasent*, supra at 864 (1); *Fountain v. Thompson*, 252 Ga. 256 (312 SE2d 788) (1984) and *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823 (4) (409 SE2d 524) (1991). We disagree.

For more than a century, Georgia has followed the rule that one who becomes voluntarily intoxicated is held thereafter to the same standard as if he were a sober person. This rule has been applied in a variety of tort situations, particularly in incidents involving trains. See generally *Rollestone v. Cassirer & Co.*, 3 Ga. App. 161, 174 (4) (59 SE 442) (1907) and cases cited therein. In adopting this special rule for voluntary intoxication cases, our courts long ago weighed the relevant legal and policy factors and concluded that voluntary intoxication should not relieve persons of their duty to use due care for their own safety or to discover and appreciate the nature of clear and apparent risk. See generally *Southland Butane*, supra; *Shuman v. Mashburn*, 137 Ga. App. 231, 232-237 (1)-(3) (223 SE2d 268) (1976). Thus, in *Rollestone*, supra, this Court observed: "That school of jurists who consider torts as akin to crimes apply to the case of a drunk man, as to his capacity both for negligence and for contributory negligence, the ancient maxim that drunkenness is no excuse for crime. The other school, although they do not base their theories of tort on the criminal law, just as uniformly hold the drunk man responsible for his conduct under a given state of circumstances as if he were sober. Irrespective of the various reasons given, all courts now hold that the drunk man, so far as his own conduct is concerned, is to be considered, *in all matters of volition, judgment, caution*, and general mental state, just as if he were sober. The state of mind produced by intoxication will be disregarded in viewing his actions, and he will be judged as if he possessed his normal capacities. . . . Wherever, [in] the transaction as it occurred, a sober man could not recover, on account of his contributory negligence in having acted imprudently or rashly or in failing to use [due] care to avoid injury, the drunk man will likewise be precluded. As against himself, the acts of a drunk man will afford the same concurrence with the negligence of the opposite party creating the juridic cause of his injury as if he were sober; and to the same extent, *his acts may so intervene as to interpose a proximate cause between the defendant's negligence and the injurious result*, and this may make the defendant's wrong juridically remote." (Emphasis supplied.) Id. at 174-175 (4).

In *Southland Butane*, supra at 667, the Supreme Court stated: "The rule is so well established in this [s]tate that the acts or conduct of one voluntarily drunk will be measured by the same rules as those applying to a sober person, that citation of the numerous decisions to that effect by both this court and by the Court of Appeals is deemed unnecessary." The Supreme Court further held that the deceased vol-

untarily got drunk, and while in that condition placed himself in a state of peril, and that such conduct evinced a total want of care which a man of common sense would take of himself and was nothing short of gross negligence. Id. at 668. In concluding that a verdict was demanded for the defendant, the Supreme Court opined: " 'One who knowingly and voluntarily takes a risk of injury to his person and property, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety and that of his property, can not hold another liable for damages from injuries thus occasioned.' " Compare *Lawrence*, supra at 2 (3); see also Adams & Adams, supra at § 19-2. This Court in *Lawrence*, supra at 2 (3), followed the holding in *Southland Butane*, supra, that the acts or conduct of one voluntarily drunk will be measured by the same rules as those applying to a sober person and affirmed the grant of summary judgment in favor of the defendants. In so ruling, it was held that, under the existing facts, plaintiff's son had assumed whatever risk might develop and an action for his death was barred. *Lawrence*, supra at 1 (1) (son was a passenger in an automobile engaged in a drag race at a speed of approximately 100 mph; he knew the driver intended to race and acquiesced in such conduct). *Southland Butane*, supra, and *Lawrence*, supra, are consistent with the principle that "the plaintiff will not be heard to say that he did not comprehend a risk which must have been quite clear and obvious to him. There are some things . . . which are so far a matter of common knowledge in the community, that in the absence of some satisfactory explanation a denial of such knowledge simply is not to be believed." Prosser & Keeton, supra at p. 488, § 68; compare *Tennison v. Lowndes-Echols Assn. &c.*, 209 Ga. App. 343 (433 SE2d 344) (1993). McEachern was a primary actor in this "Russian Roulette" type of conduct; the results of such "a bizarre pastime with a lethal weapon" are "obvious and well-known." See *Thompson v. Prudential Ins. Co. &c.*, 84 Ga. App. 214, 220 (66 SE2d 119) (1951) (insured knew the handgun was loaded and deliberately did not determine whether the handgun would fire when he pulled the trigger).

*Fountain*, supra, is factually distinguishable from the facts of this case and is not controlling. The "question" in *Fountain* concerned "Thompson's duty of care toward Fountain." Id. at 256-258. Examination of *Vaughn*, supra, and *Beringause*, supra, establishes that voluntary intoxication neither was at issue nor otherwise expressly addressed by the appellate courts in these cases. We are unwilling to find that the time-tested precedent pertaining to voluntary intoxication — a precedent based on the balancing of sound public policy interests — should be invalidated on the unnecessary assumption that our Supreme Court intended to overrule such an important doc-

trine by mere implication. Such a holding would run contrary to the long-standing appellate rule that issues which merely lurk in the record, neither brought to the appellate court's attention nor ruled upon, are not to be considered as having been so decided as to constitute precedent. See *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529) (1960). Also, the adoption of "a purely subjective standard opens a very wide door for the plaintiff who is willing to testify that [for some reason peculiar to his alleged situation, such as voluntary intoxication,] he did not know or understand the risk." Prosser & Keeton, supra at p. 487, § 68. We will not cast away the well-reasoned voluntary intoxication principle unless and until the law requires that we do so. This precedent has withstood the test of time. While in some instances stability in the law must give way to changing technology and justice, " '[s]tability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument.' " *State Farm &c. Ins. Co. v. Astro Leasing*, 194 Ga. App. 515, 518 (390 SE2d 885) (1990). While a decision may be overruled directly or impliedly, as by a refusal to apply it in subsequent cases, the overruling or reversal of a decision, or of one proposition of a decision, does not argue unsoundness therein as to other separate and distinct propositions. Id. at 517.

Even if McEachern's state of intoxication were to be considered as a factor, under the facts of this case, summary judgment in behalf of the defendant as to all claims *based on negligence* is appropriate. The perilous and openly dangerous nature of McEachern's conduct is beyond question. McEachern loaded the handgun himself; he possessed enough faculty of mind and physical dexterity to accomplish this act. He had the physical dexterity to point the handgun at Muldovan and pull the trigger. Muldovan was then handed the handgun by McEachern so he could perform a similar act toward McEachern. When the handgun failed to discharge, McEachern directed Muldovan to pull the trigger again. McEachern's own words and conduct unequivocally announce and establish his existing intent. His words and conduct establish, first, that he had enough sobriety to intend that Muldovan point and repeatedly pull the trigger of the handgun which McEachern personally had loaded with a bullet, and second, that he appreciated what it was that he desired Muldovan to do. Compare *Shuman*, supra at 235. Under the uncontroverted facts of this case, the jury could draw but one conclusion: that McEachern, knowing the handgun was loaded, intended that Muldovan point it at him and pull the trigger and that Muldovan do so without ascertaining in what position the round was chambered. Compare *Tennison*, supra. That McEachern chose to subject himself to such an open, obvious and senseless danger — a danger of his own creation — is a tragic misfortune, but the appellate process affords us no latitude to

make adjustments for the ill-earned good fortune of the lucky or the heart-rending misfortune of the unlucky. We must interpret the law and apply it with an even hand. *Floyd S. Pike Elec. Contractors v. Williams*, 207 Ga. App. 86, 89 (2) (e) (427 SE2d 67) (1993). Obviously, this Court cannot predict all possible circumstances which could arise in tort cases involving voluntary intoxication. For example, where plaintiff's intoxication is either the sole or concurrent proximate cause of injury, *Southland Butane*, supra, causes assumption of risk to bar recovery, except where the doctrine of last clear chance is presented by the evidence. Compare *Fountain*, supra. Accordingly, we are neither holding nor implying herein that voluntary intoxication, per se, will always result in a bar to recovery.

3. The trial court erred in granting summary judgment to Graham. The evidence before the court presented a question for jury resolution whether it was foreseeable that Muldovan would engage in some form of negligent or intentional conduct after Graham sold him the handgun which would result in his or another party's injury or death.

Recognizing the inherent dangerousness of handguns in the possession of minors, the legislature enacted OCGA § 16-11-101.1, which makes it unlawful for a person intentionally, knowingly, or recklessly to sell or furnish a pistol or revolver to a minor, except under certain circumstances not relevant here. Graham breached a duty created by statute when he sold the handgun to Muldovan. It is a question for the jury whether it was reasonably foreseeable that Graham's conduct would result in the death of McEachern due to the subsequent playing of a deadly game with the handgun by Muldovan. Compare *Spires v. Goldberg*, 26 Ga. App. 530 (106 SE 585) (1921). "The causal connection between an original act of negligence and injury to another is not broken by the intervening act of a third person, if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrongdoer. The foreseeability of an intervening act [generally] is a question upon which reasonable minds might differ." (Citations and punctuation omitted.) *Mobley v. Flowers*, 211 Ga. App. 761, 762 (2) (440 SE2d 473) (1994). "When from human experience the original wrongdoer has reason to know that his negligence will induce or provide the opportunity for another's negligence, he cannot rely on the doctrine of intervening or supervening cause to insulate him from liability when an injury does occur." Adams & Adams, supra at p. 257, § 15-4.

OCGA § 16-11-101.1 clearly was intended to protect minors from their own inability to protect themselves from their dangerous conduct when in possession of handguns, including their own lack of judgment or inability to resist various peer pressures. Thus, OCGA § 16-11-101.1 appears to be the type of statute whose fundamental

purpose would be defeated if the minor were permitted to assume the risk vis-a-vis the seller thereby relieving the seller of responsibility for injury resulting from the use of the illegally sold or furnished handgun. See generally Prosser & Keeton, supra at pp. 492-493, § 68.

For all these reasons, as to Case No. A98A0621, we reverse the trial court's grant of summary judgment to Muldovan as to the claim of the intentional tort of battery and as to claims based on averred wilful and wanton conduct; we affirm the trial court's grant of summary judgment to Muldovan as to claims based on averred negligent conduct to which the doctrine of assumption of the risk is applicable. As to Case No. A98A0622, we reverse the trial court's grant of summary judgment to Graham.

*Judgment affirmed in part and reversed in part in Case No. A98A0621. Judgment reversed in Case No. A98A0622. Blackburn, Smith, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur. Eldridge, J., concurs fully with the majority and concurs specially separately. McMurray, P. J., concurs specially. Andrews, C. J., Pope, P. J., and Beasley, J., concur in part and dissent in part.*

ELDRIDGE, Judge, concurring specially.

While I agree entirely with the opinion of the majority, I feel that the complexity of the issues and the divergent prior opinions of this Court as to the meaning of contributory negligence and assumption of risk require further elaboration.

1. " 'Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection. Unlike assumption of risk, the defense does not rest upon the idea that defendant is relieved of any duty toward the plaintiff.' Prosser, [Law of Torts (4th ed.), p. 440]. 'Closely allied to the doctrine of contributory negligence is the rule of "avoidable consequences," which denies recovery for any damages which could have been avoided by reasonable conduct on the part of the plaintiff. Both rest upon the same fundamental policy of making recovery depend upon plaintiff's proper care for the protection of his own interests, and both require of him only the standard of the reasonable man under the circumstances.' Prosser, supra, at 422; see Harper and James, [Law of Torts, Vol. 2, Ch. XXI], at 1231." *Osburn v. Pilgrim,* 246 Ga. 688, 695 (273 SE2d 118) (1980).

Contributory negligence is comprised of two separate and distinct defenses. See *Savannah Elec. Co. v. Jackson,* 132 Ga. 559, 562 (2) (64 SE 680) (1909); *Savannah, Fla. &c. R. Co. v. Stewart,* 71 Ga. 427, 428 (2) (1884); *Whatley v. Henry,* 65 Ga. App. 668, 673-674 (6) (16 SE2d 214) (1941). "[F]irst the plaintiff must at all times use ordinary care for his own safety; that is, he must not by his own negli-

gence (or consent) proximately cause his own injuries; and second, the plaintiff must use ordinary care to avoid the consequences of the defendant's negligence when it is apparent or when in the exercise of ordinary care it should become apparent. . . . Comparative negligence is applicable only when the jury has not found either the negligence of the plaintiff or that of the defendant to be the sole proximate cause. [Cits.]" *Whatley v. Henry*, supra at 674; see also *Edwards v. Trammell*, 187 Ga. App. 22, 24 (369 SE2d 288) (1988); *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574, 576 (436 SE2d 690) (1993). "Comparative negligence by the plaintiff is that negligence which joins with the negligence of the defendant in proximately causing the injuries of the plaintiff and goes in reduction of the amount of recovery in proportion that the negligence of the plaintiff compares with that of the defendant, resulting, by reduction, in a bar of recovery when the negligence of the plaintiff is equal to or greater than that of the defendant." (Emphasis omitted.) *Whatley v. Henry*, supra at 674.

No one has a duty to anticipate the active negligence of another. *Poppell v. Smutney*, 106 Ga. App. 480 (127 SE2d 335) (1962); *Economy Gas &c. Co. v. Kinslow*, 74 Ga. App. 418 (39 SE2d 899) (1946). Further, the plaintiff has no duty to avoid the active negligence of another until such negligence has, in fact, occurred and is known by the plaintiff, or by the plaintiff's exercise of ordinary care and diligence should have been apparent to him. *Newman v. Collins*, 186 Ga. App. 595, 596 (1) (367 SE2d 866) (1988) (physical precedent only); *Seaboard Coast Line R. Co. v. Clark*, 122 Ga. App. 237, 240 (5) (176 SE2d 596) (1970).

2. Assumption of the risk occurs " '[w]hen a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the taking of such a risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, he cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of such other person.' " *Deere & Co. v. Brooks*, 250 Ga. 517, 518-519 (1), (2) (299 SE2d 704) (1983); see also *City of Winder v. Girone*, 265 Ga. 723, 724 (2) (462 SE2d 704) (1995); *Union Camp Corp. v. Helmy*, 258 Ga. 263, 267 (367 SE2d 796) (1988); *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984); *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665, 669-670 (88 SE2d 6) (1955); *Newman v. Collins*, supra at 596.

"Testing a known peril acts as a transition between the concepts of avoidance and assumption of the risk. 'One who recklessly tests an observed and clearly obvious peril is guilty of lack of ordinary care,' *Brooks v. Douglas*, 154 Ga. App. 54, 58 (2) (267 SE2d 495) (1980) ([physical precedent only]), and is guilty of such negligence 'which will be deemed the proximate cause of [the] resulting injury, and, in

the absence of wilful or wanton misconduct by the defendant, will preclude recovery.' *Laseter v. Clark*, 54 Ga. App. 669, 670 (1) (189 SE 265) (1936)." *Newman v. Collins*, supra at 596.

"*Taylor v. Morgan*, 54 Ga. App. 426 (188 SE 44) (1936), and other cases, appear to blend or merge the two concepts of avoidance and assumption of the risk when they are separate and distinct. Assumption of risk in its simplest and primary sense means that the plaintiff has given him express consent to relieve the defendant of an obligation of conduct toward him and to take his chance of injury from a known risk. *Owens-Ill. v. Bryson*, 138 Ga. App. 78, 79 (225 SE2d 475) (1976). Also, plaintiff with knowledge of the risk may be regarded as tacitly or impliedly agreeing to take his own chances. Id. at p. 79. In working out the distinction the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it. *Roberts v. King*, [102 Ga. App. 518, 521 (1) (116 SE2d 885) (1960)]. The doctrine of avoidable consequences does not rest upon the idea that [the] defendant is relieved of any duty toward plaintiff, but denies recovery for any damages which could have been [discovered by plaintiff or might have been] avoided by reasonable conduct on plaintiff's part. *Osburn v. Pilgrim*, [supra at 695]. Avoidance of the consequences involves the failure to take action to overcome defendant's negligence after it is . . . discovered by . . . plaintiff's exercise of ordinary care. *Lanier v. Turner*, 73 Ga. App. 749, 753 (38 SE2d 55) (1946). The rule which requires one to avoid the consequences of another's negligence does not apply until he sees the danger or has reason to apprehend it. *Central R. &c. Co. v. Attaway*, 90 Ga. 656, 661 (16 SE 956) (1892). See *Griffin v. Campbell*, 112 Ga. App. 420 (2) (145 SE2d 659) (1965); *Smith v. 670 New Street*, 111 Ga. App. 35, 38 (140 SE2d 495) (1965); *Economy Gas & Appliance Co. v. Kinslow*, [supra at 420]." (Punctuation omitted.) *Newman v. Collins*, supra at 596-597.

For the defense of assumption of risk to be applicable to a case, there must be evidence that "the plaintiff had actual knowledge of the dangerous situation that resulted in his injury, and an appreciation of the risks associated with that dangerous situation." *Vaughn v. Pleasant*, 266 Ga. 862, 863 (471 SE2d 866) (1996). " 'Knowledge of the general danger may not be enough, and some courts require knowledge of the specific risk that caused the plaintiff's harm. *The standard to be applied is, in theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence. If, because of age or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it. His failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but*

*of the defense of contributory negligence.'* Prosser & Keeton, The Law of Torts, § 68, p. 487 (5th ed. 1984)." (Emphasis in original.) *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 824 (4) (409 SE2d 524) (1991). "The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he[,] without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk is the watchword of assumption of risk, and means both actual and subjective knowledge on plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities." (Citations and punctuation omitted.) *Vaughn v. Pleasant*, supra at 864; see also *Smith v. Mangram*, 222 Ga. App. 585, 586 (474 SE2d 758) (1996); *York v. Winn-Dixie Atlanta*, 217 Ga. App. 839 (459 SE2d 470) (1995); *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 94-95 (3) (449 SE2d 618) (1994). "In by far the greater number of cases, the consent to assume the risk has not been a matter of express agreement, but has been found to be implied from the conduct of the plaintiff under the circumstances." (Citations and punctuation omitted.) *Tennison v. Lowndes-Echols Assn. for Retarded Citizens*, 209 Ga. App. 343, 344 (433 SE2d 344) (1993); accord *Osburn v. Pilgrim*, supra at 695; *Stallings v. Cuttino*, 205 Ga. App. 581, 582 (422 SE2d 921) (1992). Thus, although the deceased was extremely intoxicated, his conduct over the course of the evening in regard to the loading and unloading of the pistol, pointing it at others, having the pistol pointed at him, and pulling the trigger or encouraging others to do the same was clear and palpable evidence of his awareness and appreciation of the risk and consent to assume such risk of negligence that he, himself, created and encouraged by producing the pistol, loading it, and sharing the play with the pistol with others.

3. Neither *Vaughn v. Pleasant*, supra at 864 (1), nor *Fountain v. Thompson*, supra, impliedly overruled *Southland Butane Gas Co. v. Blackwell*, supra, or *Lawrence v. Edwards*, 128 Ga. App. 1, 2 (3) (195 SE2d 244) (1973). However, when voluntary alcohol consumption renders the plaintiff unconscious or causes the plaintiff to black out so that his conduct appears visibly impaired, the defendant could remain liable under the last clear chance doctrine where it was obvi-

ous that the plaintiff was helpless in a position of danger and defendant through the exercise of ordinary care, after discovering the plaintiff in the position of peril, could avoid injuring him through the exercise of ordinary care and failed to do so. See *Fountain v. Thompson,* supra. However, the last clear chance doctrine is not applicable under the facts of this case.

McMURRAY, Presiding Judge, concurring specially.

I concur with the majority that the grant of summary judgment in Case No. A98A0622 must be reversed because there exists a genuine issue of material fact as to the issue of foreseeability. And, I agree with the majority insofar as it reverses the grant of summary judgment which was entered based upon a theory of assumption of the risk in Case No. A98A0621, albeit my concurrence is based upon a different analysis from that applied by the majority.

"When one assumes the risk of the wilful and wanton misconduct of another a recovery on the basis of such misconduct is precluded and the law will not undertake to divide the wantonness into degrees or fractions of degrees to ascertain whether the death or injury resulting was fully realized and appreciated by the one so assuming the risks. The law will hold such a one to have assumed whatever risks develop in the process of the activity engaged in." *Roberts v. King,* 102 Ga. App. 518, 523 (116 SE2d 885). While the majority declines to follow this holding and concludes that the better view is found in authorities holding that assumption of the risk is not a valid defense and is not a bar in claims arising from wilful and wanton conduct, I note that there is no acknowledgment by the majority of the distinction upon which this holding is based. *Roberts,* like the case sub judice, involves a plaintiff who ostensibly consents not simply to negligent conduct on the part of defendant but consents to wilful and wanton conduct on the part of defendant. None of the authority relied upon by the majority involves such a plaintiff, who has consented to wilful and wanton conduct on the part of the defendant, and in my view those cases cited by the majority should be distinguished on this basis.

Instead, I would look to recent decisions of this Court and of the Supreme Court of Georgia which carefully define the appropriate analysis which is appropriate in review of cases involving the defenses of assumption of risk and contributory negligence. In *Beringause v. Fogleman Truck Lines,* 200 Ga. App. 822, 823 (4) (409 SE2d 524), this Court returned to a bedrock principle by noting that the knowledge of risk at issue with regard to the defense of assumption of risk is subjective knowledge. " *The standard to be applied is, in theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary*

*prudence who appears in contributory negligence.'"* (Emphasis in original.) Id. at 824 (4). This principle is acknowledged by the Supreme Court of Georgia, which states that knowledge of the risk "means both *actual* and *subjective* knowledge on the plaintiff's part." (Punctuation omitted; emphasis in original.) *Vaughn v. Pleasant,* 266 Ga. 862, 864 (1) (471 SE2d 866).

In the case sub judice, the evidence establishes that at the time of the incident, Michael McEachern was noticeably intoxicated, and plaintiffs argue that this evidence was sufficient to create a jury question as to what he understood and appreciated. The same argument in substance was addressed by this Court in *Lawrence v. Edwards,* 128 Ga. App. 1, 2 (3) (195 SE2d 244), and rejected on the basis of a rule that the acts and conduct of one voluntarily intoxicated will be measured by the same rules as those applying to a sober person. See also *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 667 (88 SE2d 6). However, and with all due respect to the analysis of this issue on the part of the majority, this objective standard cannot be reconciled with the requirement of *Vaughn* and *Beringause,* that, for purposes of an assumption of risk defense, knowledge of the risk be examined under a subjective standard which considers the actual circumstances of a plaintiff. We are bound to follow the controlling authority of the Supreme Court of Georgia's decision in *Vaughn v. Pleasant,* 266 Ga. 862, 864 (1), supra, tacitly overruling *Lawrence* in part, as well as such conflicting portions of *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 667, supra, as may have remained viable following the decision in *Fountain v. Thompson,* 252 Ga. 256 (312 SE2d 788). Consequently, Division 3 of the *Lawrence* decision should no longer be followed.

" 'In assessing whether a plaintiff had the requisite knowledge of the danger and appreciation of the risks, a subjective standard applies, that is, what the particular plaintiff knew, understood and appreciated. (*Vaughn v. Pleasant,* 266 Ga. 862, 864[, supra]); *Beringause v. Fogleman Truck Lines,* 200 Ga. App. 822, 824[, supra]. A plaintiff lacking such subjective knowledge of the danger will not be taken to have assumed the risk even though his conduct may be deemed contributory negligence for his failure under an objective knowledge standard to discover the danger by exercising the ordinary care required of a reasonable man. Id. at 824.' *Sutton v. Sumner,* 224 Ga. App. 857, 859 (482 SE2d 486)." *Desai v. Silver Dollar City,* 229 Ga. App. 160, 164 (3), 165 (493 SE2d 540).

Applying a subjective standard in assessing what Michael McEachern knew, understood, and appreciated, it is clear that the evidence as to the length of the period of time he had been drinking, the description of the beverages that were being consumed, and the testimony concerning his demeanor, including that regarding state-

ments he made with respect to the subject of suicide and otherwise expressing a depressed state of mind, were sufficient to create a question of fact concerning whether he was so intoxicated or depressed as to be unable to understand and appreciate the risks associated with defendant Muldovan's actions. Thus, I would hold that a grant of summary judgment based on a theory that Michael McEachern had assumed the risk of being shot is not authorized by the evidence.

Neither should the conduct of Michael McEachern be deemed to have established the defense of contributory negligence as a matter of law. There is evidence that defendant Muldovan was aware that the gun was loaded and thus engaged in wilful and wanton conduct in pointing the gun at Michael McEachern and pulling the trigger. Such wilful and wanton conduct should preclude a defendant from relying upon the defense of contributory negligence. *Williams v. Knight*, 211 Ga. App. 420 (1) (439 SE2d 507); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 111 (2) (a) (387 SE2d 144); *Terrell v. Hester*, 182 Ga. App. 160 (2) (355 SE2d 97); *Intl. Assn. of &c. Iron Workers, Local 387 v. Moore*, 149 Ga. App. 431, 436 (11) (254 SE2d 438).

Also, in Case No. A98A0621, I concur with the affirmance of the grant of summary judgment on behalf of Muldovan as to claims based on allegations of negligent conduct. Again, although I do not embrace the reasoning of the majority, I believe that this portion of the judgment below is correct under a right for any reason analysis and application of the objective standard of the contributory negligence defense.

ANDREWS, Chief Judge, concurring in part and dissenting in part.

The facts of this tragic case show that the deceased, Michael McEachern, age 17, and his friend, Michael Muldovan, also a minor, were engaged in a deadly game of chance with a loaded revolver. On or about July 22, 1993, while both of them were under the influence of alcohol at a party with other friends, McEachern and Muldovan passed a revolver back and forth pointing it at each other and pulling the trigger. McEachern was seen loading and unloading the revolver, so it is unclear whether the revolver was loaded or unloaded at any point during this initial period of time. At some point, however, while McEachern and Muldovan were sitting at a table, McEachern put a single bullet in the revolver. The evidence is disputed as to whether Muldovan knew the revolver was loaded with the bullet, but for purposes of reviewing the trial court's decision on summary judgment, it will be assumed that Muldovan was aware of this fact. McEachern pointed the loaded revolver at Muldovan's head and pulled the trigger. The revolver did not discharge, and McEachern handed the

revolver to Muldovan. Muldovan pointed the revolver at McEachern's head and pulled the trigger. The revolver did not discharge, and McEachern told Muldovan to pull the trigger again. Muldovan pulled the trigger again and the revolver discharged, killing McEachern with a bullet wound to the head.

Other evidence showed that prior to the party, Muldovan or Muldovan and McEachern together purchased the revolver from Ben Graham.

McEachern's parents and the administratrix of his estate sued Muldovan claiming that he negligently shot and killed McEachern, that his actions constituted a battery, and that he acted wantonly and recklessly. They also sued Graham claiming that he negligently sold the revolver to a minor in violation of former OCGA § 16-11-101 and that this constituted wanton and reckless conduct.[1]

The McEacherns and the administratrix appealed from the trial court's grant of summary judgment in favor of Muldovan and Graham. Because the facts plainly and indisputably establish that McEachern voluntarily engaged in and consented to the above described actions, he assumed the risk that the revolver would discharge and that he would be shot and killed.

Accordingly, I fully concur with the majority that McEachern assumed the risk that the plaintiffs' claims against Muldovan based on negligent conduct are barred. I also fully concur with the majority that the long-standing doctrine of voluntary intoxication, as it applies to assumption of the risk, remains viable. I dissent, however, from the majority's conclusion that Muldovan was not entitled to summary judgment for wilful and wanton misconduct on the basis of assumption of the risk.

This Court stated the correct rule in *Roberts v. King*, 102 Ga. App. 518 (116 SE2d 885) (1960): "Where one assumes the risk of wilful and wanton misconduct and is injured or killed thereby a cause of action for such injury or death is barred. Code § 105-1803 [now codified as OCGA § 51-11-2]. The true defense in these cases is the doctrine of assumption of the risks. This doctrine has sometimes been mistakenly referred to as contributory negligence. In the cases in which this has been done the term contributory negligence truly means assumption of risk or consent to the injury for the reason that in such cases the so-called contributory negligence would not necessarily have barred the action where wilful and wanton misconduct was involved, whereas the assumption of risk doctrine would have. . . . Even where the defendant's act is such, by reason of its

---

[1] The plaintiffs also sued other defendants claiming they negligently furnished alcoholic beverages to minors. None of these defendants is involved in this appeal.

wantonness or otherwise, as to cut off the defense of contributory negligence, the plaintiff can not recover, if it appears that *he consented to the injury.* Insofar as cases like the instant case are concerned *we can see no difference between the consent principle and the principle of assumption of risk. The doctrine of assumption of risk in general is of recent development, but has been applied to Georgia under the consent doctrine.* . . . Assumption of risk in its simplest and primary sense means that the plaintiff *has given his express consent to relieve the defendant of an obligation of conduct toward him* and to take his chance of injury from a known risk." (Citations and punctuation omitted; emphasis supplied.) Id. at 520-521.

As set forth in *Roberts,* the Georgia doctrine of assumption of risk embodies the principle that one may consent to conduct which causes injury, whether that conduct be negligent, wilful, or wanton. This consent principle is set forth by statute in OCGA § 51-11-2 (former Code § 105-1803), as cited in *Roberts,* 102 Ga. App. at 520. The statute provides that: "As a general rule no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind. The consent of a person incapable of consenting, such as a minor, may not affect the rights of any other person having a right of action for the injury." OCGA § 51-11-2.

The statute precludes consent by a minor incapable of giving such consent, but does not preclude consent by a minor capable of consenting. *Wittke v. Horne's Enterprises,* 118 Ga. App. 211, 215, n. 2 (162 SE2d 898) (1968). A minor 17 years of age, like McEachern in the present case, is not treated as a child of tender years incapable of giving consent, but is a person capable of consenting as an adult and chargeable with the exercise of ordinary diligence. Id.; *Redding v. Morris,* 105 Ga. App. 152 (123 SE2d 714) (1961); compare *Wood v. Morris,* 109 Ga. App. 148, 149-150 (135 SE2d 484) (1964) (minor of tender years incapable of giving consent under OCGA § 51-11-2 (former § 105-1803)).

Moreover, OCGA § 51-11-2 provides that *"no tort* can be committed against a person consenting thereto. . . ." (Emphasis supplied.) The statute is not limited to negligent torts; rather it clearly encompasses all torts including those based on wilful, wanton, or intentional misconduct. *Jarrett v. Butts,* 190 Ga. App. 703, 704-705 (379 SE2d 583) (1989) and *Spikes v. Heath,* 175 Ga. App. 187, 189-190 (332 SE2d 889) (1985) (recognizing the application of the consent defense of § 51-11-2 to intentional tort claims of assault and battery); *J. H. Harvey Co. v. Speight,* 178 Ga. App. 812, 813-814 (344 SE2d 701) (1986) (concluding that the consent provisions of § 51-11-2 precluded a claim for the intentional tort of assault and battery); *Crowley v. Ford Motor Credit Co.,* 168 Ga. App. 162 (308 SE2d 417) (1983)

(applying the consent defense under § 51-11-2 to affirm the grant of summary judgment to a defendant sued for the intentional tort of conversion); *Roberts*, 102 Ga. App. at 520-523 (holding that the consent defense set forth in § 51-11-2 was a defense to a claim for wilful and wanton misconduct); see also Adams & Adams, Ga. Law of Torts (1997 ed.), § 2-8 (citing the consent provisions of § 51-11-2 as a defense to intentional torts).

A close examination of cases cited by the majority shows that they are not persuasive authority on the issue of whether McEachern is barred from recovery under the consent principle embodied in the assumption of risk defense:

(a) In *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264, 266 (387 SE2d 593) (1989), cited by the majority, the Court stated that assumption of the risk was not a defense to an intentional tort such as battery. The only authority cited by *Hendricks* for this statement was *Harvey Freeman & Sons v. Stanley*, 259 Ga. 233, 234-235 (378 SE2d 857) (1989), also cited by the majority. In *Stanley*, the Supreme Court addressed the application of OCGA § 51-11-7 to a claim of intentional versus negligent acts. Although *Stanley* loosely characterizes § 51-11-7 as a statute on "assumption of risk/avoidance doctrine," it is clear that in citing the statute the Court was addressing the avoidance of danger aspect of contributory negligence set forth in § 51-11-7. See *Union Camp Corp. v. Helmy*, 258 Ga. 263, 267 (367 SE2d 796) (1988) (recognizing that § 51-11-7 sets forth principles of contributory negligence and comparative negligence).

(b) *Terrell v. Hester*, 182 Ga. App. 160-161 (355 SE2d 97) (1987), cited by the majority, states only that a charge on OCGA § 51-11-7 is not appropriate in an intentional tort case. *Terrell* recognized that § 51-11-7 was the Georgia comparative negligence statute and that § 51-11-2 embodied the assumption of risk and consent principles set forth in *Roberts*, 102 Ga. App. 518.

(c) *Hopkins v. First Union Bank &c.*, 193 Ga. App. 109, 111 (387 SE2d 144) (1989) is cited by the majority for its holding that "[i]t is well-settled that the defenses of comparative negligence, negligence per se, assumption of the risk and contributory negligence are not valid defenses to intentional, wilful, or wanton and reckless torts." *Hopkins* cited seven cases to support this broad statement. Six of the cited cases contained no holdings that assumption of the risk was not a defense to intentional, wilful, or wanton and reckless torts. The seventh case cited in *Hopkins* was *Intl. Assn. of &c. Iron Workers, Local 387 v. Moore*, 149 Ga. App. 431, 436 (254 SE2d 438) (1979), a case also cited by the majority. In concluding, the trial court properly refused to give two jury charges which were characterized as involving plaintiff's alleged assumption of the risk; *Moore* held only that contributory negligence is not a defense to an alleged wilful tort. Id.

at 436.

(d) *Barrow v. Ga. &c. Aggregate Co.*, 103 Ga. App. 704, 705 (120 SE2d 636) (1961), disapproved on other grounds, *OB-GYN Assoc. of Albany v. Littleton*, 259 Ga. 663, 667 (386 SE2d 146) (1989), cited by the majority, held only that the contributory negligence of the plaintiff is not a defense to a wilful tort.

(e) *Williams v. Knight*, 211 Ga. App. 420-421 (439 SE2d 507) (1993), cited by the majority, stated that assumption of the risk was not a valid defense to intentional, wilful, reckless, or wanton torts, but the only authority cited in support of this statement was *Hopkins*, supra, and *Hendricks*, supra.

Contrary to the contention of the majority, *Roberts*, 102 Ga. App. 518, which addresses the relationship of the consent principle in OCGA § 51-11-2 to assumption of the risk is the better reasoned authority supporting the rule that the plaintiff's assumption of risk will bar an action alleging wilful and wanton misconduct by the defendant. See also *Sewell v. Dixie Region Sports Car Club &c.*, 215 Ga. App. 611, 612 (451 SE2d 489) (1994) and *Newman v. Collins*, 186 Ga. App. 595, 596 (367 SE2d 866) (1988) (assumption of risk will bar plaintiff's action even though there was wilful and wanton misconduct on defendant's part).

The close relationship of the consent principle set forth in OCGA § 51-11-2 with assumption of risk is also recognized in the Restatement of the Law, Second, Torts 2d. The introductory note to Restatement of the Law, Torts 2d, Chapter 17A, Assumption of Risk, states that: "[This Chapter] is concerned only with the plaintiff's assumption of the risk arising from the defendant's negligent or reckless conduct. As to the plaintiff's consent to accept harm or a risk arising from the defendant's intentional conduct, see § 892." Section 892A (1) of Restatement of the Law, Torts 2d, provides that: "One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." The comment to subsection (1) explains that "[t]his principle is expressed in the ancient legal maxim, *volenti non fit injuria*, meaning that no wrong is done to one who consents. . . . The consent is to conduct but is confined to conduct that the plaintiff knows the other is engaging in with the intent of invading the plaintiff's interests. . . . A similar principle is applied to acts that are not intended to invade the plaintiff's interests but merely create a risk of the invasion, so that they are negligent with respect to it. This principle is called assumption of risk in this Restatement. (See Chapter 17A, §§ 496A-496G)."

Similarly, Restatement of the Law, Second, Torts 2d, § 892C (1) provides that "consent is effective to bar recovery in a tort action although the conduct consented to is a crime." The rationale for the

rule is set forth in comments to the section: "In addition to the usual rule that consent to the conduct complained of bars recovery in a tort action stated in § 892A, there is the further fact that the plaintiff by his consent has participated in[,] or at least encouraged, the commission of the crime and so is himself at fault and acting contrary to the policy of the law concerning the very matter of which he complains, so that he has little standing before the court from which he seeks redress." Comment b.

The principle of consent embodied in the Georgia rule of assumption of risk, as set forth in *Roberts*, 102 Ga. App. 518, and OCGA § 51-11-2, and the similar principle recognized in the Restatement (Second) of Torts, fit squarely with the facts of this case. McEachern gave full consent to Muldovan's intentional conduct toward him with knowledge of the obvious risks. Whether Muldovan's conduct is characterized as negligent, wilful and wanton, or intentional, it cannot be the basis for a tort claim against Muldovan because McEachern clearly consented to it.

As to the claim against Graham in Case No. A98A0622, I agree with the conclusion reached by the majority that the trial court erred by granting summary judgment in favor of Graham, but I do not agree with all that is stated by the majority in reaching this conclusion.

I am authorized to state that Presiding Judge Pope and Judge Beasley join in this partial concurrence and partial dissent.

DECIDED JULY 31, 1998 — RECONSIDERATIONS DISMISSED
AND DENIED SEPTEMBER 1, 1998 —

*Hugh Gordon, Brian L. Causey*, for appellants.
*Reinhardt, Whitley & Wilmot, Glenn Whitley*, for appellee (case no. A98A0621).
*Walters, Davis & Pujadas, J. Harvey Davis*, for appellee (case no. A98A0622).