S99G0012. MULDOVAN v. McEACHERN et al.
(523 SE2d 566)

SEARS, Justice.

Certiorari was granted from the Court of Appeals' ruling that assumption of the risk is not available as a defense to tortious claims

arising from wilful or wanton misconduct.[1] Based upon the Court of Appeals' own precedent and other authorities, we conclude that assumption of the risk is a valid defense where a plaintiff makes a subjective decision to assume the risk of harm posed by particular wilful or wanton acts. Therefore, we reverse.

Appellant Michael Muldovan and decedent Michael McEachern, both 17 years old, were best friends. Along with other teenagers, they attended a party at a residence where alcohol was consumed. During the evening, McEachern left the party with others to obtain more alcohol, which was brought back to the party. McEachern had in his possession a handgun that had previously been sold to Muldovan by Graham. McEachern repeatedly exhibited the handgun, pointed it at others, and operated its mechanisms. Several of those present at the party became concerned about McEachern's handling of the gun, although McEachern told them that it was not loaded and that the bullets were in his pocket. As the evening wore on, McEachern continued pointing the unloaded gun at others, pulling the hammer back, and snapping the trigger. Concern among the partygoers increased, and one young woman went so far as to take the gun from McEachern and run outside with it. McEachern pursued her and retrieved the handgun. Muldovan and others repeatedly told McEachern to put the handgun away.

Eventually, McEachern and Muldovan sat around a dining table with several others, passing the gun back and forth, pointing it at one another and snapping the trigger. During these exchanges, McEachern repeatedly loaded and unloaded the gun. He left the table with the gun unloaded, then returned to the table, loaded the cylinder with a bullet, pointed the gun at Muldovan's head, and snapped the trigger. The gun did not fire. There is conflicting evidence as to whether Muldovan saw McEachern load a bullet into the gun's cylinder. McEachern then handed the gun to Muldovan, who pointed the gun back at McEachern and pulled the trigger. The gun did not discharge. McEachern told Muldovan to do it again. When Muldovan pulled the trigger a second time, the gun fired, killing McEachern.

McEachern's parents filed suit, alleging that their son's death was proximately caused by Muldovan's negligence, intentional battery, and wilful and wanton misconduct.[2] The trial court granted summary judgment to Muldovan on all counts. The trial court found

---

[1] *McEachern v. Muldovan*, 234 Ga. App. 152 (505 SE2d 495) (1998).

[2] A claim was also filed against Graham, alleging negligence and wilful and wanton misconduct in his furnishing of the gun to a minor. That particular claim is not addressed in the present appeal. Nor does this appeal address questions of whether assumption of the risk is available as a defense to the intentional tort of battery. See *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264, 266 (387 SE2d 593) (1989).

it was undisputed that McEachern knew the gun was loaded when he handed it to Muldovan, and that when he told Muldovan to fire the gun at him, McEachern consented for Muldovan to pull the trigger without incurring liability for the consequences of that action. Accordingly, the trial court concluded that McEachern had assumed the risk of being injured.[3] In reaching this conclusion, the trial court noted correctly that the acts of a voluntarily intoxicated individual are judged by the same rules as the acts of a sober person.[4]

Although it agreed that McEachern should be held to the standard of a sober person, the Court of Appeals nonetheless reversed after finding that McEachern's conduct did not establish a defense of assumption of the risk, because as a matter of law, the assumption of the risk defense cannot bar tortious claims based upon intentional or wilful and wanton conduct.[5] In its decision, the Court of Appeals noted some authorities that favor making the assumption of the risk defense available to charges of wilful and wanton tortious conduct, but nonetheless concluded that the defense is only available when one could have avoided harm by exercising ordinary care to protect themselves from another's *negligence*, and that wilful and wanton acts are more analogous to intentional conduct than they are to negligent conduct.[6] This Court granted certiorari to examine whether assumption of the risk is a valid defense to claims arising from wilful and wanton conduct.

1. With reference to several opinions of this Court that are silent on the issue, the Court of Appeals' opinion questions the viability of the principle that the "conduct of one voluntarily drunk will be measured by the same rules as those applying to a sober person."[7] Even though the Court of Appeals' opinion ultimately upholds that principle, we take this opportunity to reiterate that a voluntarily intoxicated person's acts will be evaluated by the same standard as a sober person's acts. Nothing in this Court's precedent indicates otherwise, nor should it be so construed.

2. The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, " 'without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.' "[8] In Georgia, a defendant asserting an assumption of the

---

[3] See *Osborn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980); *Stallings v. Cuttino*, 205 Ga. App. 581 (422 SE2d 921) (1992).

[4] *Lawrence v. Edwards*, 128 Ga. App. 1, 2 (195 SE2d 244) (1973).

[5] *McEachern*, 234 Ga. App. at 157.

[6] 234 Ga. App. at 157.

[7] *Lawrence*, 128 Ga. App. at 2.

[8] *Vaughn v. Pleasent*, 266 Ga. 862, 864 (471 SE2d 866) (1996) (quoting *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823 (409 SE2d 524) (1991)).

risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.[9]

" 'Knowledge of the risk is the watchword of assumption of the risk,' "[10] and means both *actual* and *subjective* knowledge on the plaintiff's part.[11] The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.[12] As recently stated by this Court:

> In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from *a known risk arising from what the defendant is to do or leave undone*.[13]

As stated by the Court of Appeals, the standard to be applied in assessing an assumption of the risk defense is "a subjective one, geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence who appears in [the completely separate defense of] contributory negligence."[14]

Thus, the extent to which a plaintiff assumes the risk of injury caused by another's action or inaction depends upon the extent to which the plaintiff subjectively comprehended the specific hazard posed, and affirmatively or impliedly assumed the risk of harm that could be inflicted therefrom. Where a plaintiff subjectively assumed only the specific risk of harm emanating from negligent conduct, recovery is barred only for injuries that were negligently inflicted; in that situation, recovery is not barred for injuries that resulted from wilful and wanton conduct.[15] However, as recognized by the Court of Appeals in *Roberts v. King*,[16] where a plaintiff subjectively chooses to assume a specific risk of harm posed by wilful or wanton misconduct that he knows is contemplated by the party that inflicts the injury, recovery on the basis of such misconduct is precluded.[17] In those situ-

---

[9] *Vaughn*, supra; *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 94 (449 SE2d 618) (1994).

[10] *Vaughn*, supra (quoting *Beringause*, 200 Ga. App. at 824).

[11] *Vaughn*, supra.

[12] *Vaughn*, supra; *Beringause*, 200 Ga. App. at 823-825; *Turner*, 215 Ga. App. at 94.

[13] *Vaughn*, 266 Ga. at 864 (citing Prosser, *Law of Torts*, p. 440 (4th ed. 1971) (emphasis in original)).

[14] *Beringause*, 200 Ga. App. at 824.

[15] See *City of Winder v. Girone*, 265 Ga. 723, 724 (462 SE2d 704) (1995).

[16] 102 Ga. App. 518 (116 SE2d 885) (1960).

[17] *Roberts*, 102 Ga. App. at 520, 521.

ations, "[t]he plaintiff may assume the risk where the conduct of the defendant is wilful [or] wanton."[18] As stated in the Court of Appeals' own precedent, merely because harmful conduct was wilful or wanton, the consequences of assuming the risk of harm are not forestalled, because a "[p]laintiff's assumption of the risk will bar his action even though there was wilful and wanton misconduct on [the] defendant's part."[19]

The case of *Roberts*, supra, which is closely analogous to the present matter, is instructive on this point. In *Roberts*, the plaintiff's decedent voluntarily entered into an automobile, knowing that the driver was about to participate in a dangerous drag race. The driver lost control of the car, and the passenger was killed. Affirming a directed verdict for the defendant, the Court of Appeals held:

> When one assumes the risk of the wilful and wanton misconduct of another, a recovery on the basis of such misconduct is precluded and the law will not undertake to divide the wantonness into degrees or fractions of degrees to ascertain whether the death or injury resulting was fully realized and appreciated by the one so assuming the risks. The law will hold such a one to have assumed whatever risks develop in the process of the activity engaged in.[20]

Applying these principles to the tragic facts of this case, it is undisputed that McEachern, knowing that the handgun was loaded (having himself placed a bullet in the cylinder only moments earlier), handed the gun to Muldovan during a game of "Russian Roulette." Muldovan pointed the gun at McEachern and pulled the trigger, but the gun did not discharge. McEachern then told Muldovan to pull the trigger a second time, and the fatal bullet was fired. These undisputed facts establish that McEachern consented to assume the risk of suffering whatever harm he might sustain if the gun chamber being fired was loaded. Under the authorities discussed above, to the extent that Muldovan's conduct in firing the gun at his friend's urging was wilful or wanton, McEachern assumed the risk of harm therefrom.[21] It follows that the trial court correctly granted Mul-

---

[18] *Prosser & Keeton on Torts*, § 68, p. 495 (5th ed. 1984). See also Adams, *Georgia Law of Torts*, § 19-1, p. 329 (1998); Restatement (Second) of Torts, Ch. 17A, § 496A.

[19] *Sewell v. Dixie Region Sports Car Club of America*, 215 Ga. App. 611, 612 (451 SE2d 489) (1994); see *Newman v. Collins*, 186 Ga. App. 595, 596 (367 SE2d 866) (1988). A contrary conclusion is not mandated by the case law relied upon by the Court of Appeals' majority, because, as well explained in Chief Judge Andrews' dissent, that precedent either (1) dealt with defenses other than assumption of the risk, or (2) was based upon faulty and questionable reasoning.

[20] *Roberts*, 102 Ga. App. at 523.

[21] The conflicting evidence regarding whether Muldovan knew the gun chamber was

dovan's motion for summary judgment as to claims based upon alleged wilful and wanton misconduct, and the Court of Appeals erred in concluding otherwise.

*Judgment reversed. All the Justices concur.*

BENHAM, Chief Justice, concurring.

I reluctantly concur with the majority opinion because I believe that the legislature should modify the assumption of risk defense provided for under Georgia law in tortious claims arising from wilful or wanton acts in conformance with the prevailing approach used in other states. OCGA § 51-11-2, which was originally enacted in 1863 and provides the statutory basis for the assumption of risk defense, states that "no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind." The concept of assumption of risk is quite similar to common-law contributory negligence since both operate as a bar to a plaintiff's recovery of damages. 57A AmJur2d 721, Negligence, § 815. In some cases, the two concepts are indistinguishable. Id. For this reason, some states have refused to even distinguish between the concepts of assumption of risk and common-law contributory negligence. See, e.g., *Askin v. Dalgarno*, 293 F2d 424 (10th Cir. 1961).

The common-law contributory negligence doctrine has been uniformly criticized as being overly harsh. 57A AmJur2d 752, Negligence, § 856. In response, the vast majority of states, including Georgia, have largely replaced the common-law doctrine of contributory negligence with some form of comparative negligence, where the negligence of the plaintiff is compared with the negligence of the defendant and may serve to reduce the plaintiff's recovery of damages instead of completely barring the plaintiff's action. Id.; OCGA § 51-11-7. In this way, states modified the doctrine to achieve results more consistent with modern notions of fairness. For example, in Georgia we have limited the common-law doctrine of contributory negligence to a form of the last clear chance doctrine. See OCGA § 51-11-7.

However, Georgia has continued to recognize a plaintiff's assumption of risk as a complete bar to actions for all torts rather than as a factor that reduces a plaintiff's recovery. OCGA § 51-11-2; *Roberts v. King*, 102 Ga. App. 518 (116 SE2d 885) (1960). This practice is contrary to that of most states that have either abolished the concept of assumption of risk completely or have treated the doctrine as simply a form of comparative negligence. 16 ALR4th 700, Compar-

---

loaded has no impact on the availability of an assumption of the risk defense, because, as discussed above, the relevant inquiry on the availability of that defense is what was subjectively known by the *plaintiff's decedent*.

ative Negligence — Assumption of Risk, §§ 2-3. Georgia's retention of the assumption of risk doctrine shares the same defects as the common-law contributory negligence doctrine that has been abandoned by most jurisdictions, including Georgia. I do not believe there is any justification for treating a plaintiff's assumption of risk more harshly than a plaintiff's contributory negligence, given the very slight distinction between the two concepts.

The potential for unfair results is great, particularly since under Georgia law assumption of risk is a complete defense against tort actions based on a defendant's wanton or wilful conduct or even a plaintiff's intentional conduct. OCGA § 51-11-2; *Roberts*, supra. In the instant case, it is clear that McEachern's conduct was reckless and was partially to blame for his untimely demise. Due to his unreasonable willingness to participate in the risky game with Muldovan, it is probably fitting that McEachern should not be able to recover all of his damages. However, if this is so, I believe the better means of achieving this result is by allowing the jury to compare McEachern's fault with Muldovan's fault and reducing his damages accordingly. Otherwise, if the assumption of risk defense is allowed to stand in its present form, plaintiffs who consent to risks not nearly as outrageous as the risk assumed by McEachern will not be able to recover damages for tort actions where the defendant has engaged in wanton or wilful conduct.

I am authorized to state that Justice Hunstein joins in this opinion.

DECIDED NOVEMBER 15, 1999 —
RECONSIDERATION DENIED DECEMBER 20, 1999.

*Reinhardt, Whitley & Wilmot, Glenn Whitley, Robert C. Wilmot,* for appellant.

*J. Hugh Gordon, Walters, Davis & Pujadas, J. Harvey Davis, Moore & Studstill, Daniel L. Studstill,* for appellees.