302 Ga. 51
FINAL COPY

S17A0811, S17X0812.  JOHNSON STREET PROPERTIES, LLC v.
CLURE; and vice versa.

HUNSTEIN, Justice.

This case stems from a negligence action filed by Appellee/Cross-Appellant Cynthia Clure for injuries she sustained after being struck by a tree limb while on a premises belonging to Appellant/Cross-Appellee Johnson Street Properties, LLC (hereinafter "JSP").  Clure alleged that JSP failed to maintain a safe premises for its invitees.  JSP filed a notice to apportion fault to a non-party and moved for summary judgment, alleging that no genuine issue of material fact existed regarding its negligence.  In response, Clure filed a motion for partial summary judgment, alleging that Georgia's Apportionment Statute (OCGA § 51-12-33) was unconstitutional and that JSP's notice of non-party fault should be dismissed because of issues of proof regarding causation.

The trial court denied JSP's summary judgment motion, finding that genuine issues of material fact existed regarding its negligence.  As to Clure's partial motion for summary judgment, though the trial court found Georgia's

Apportionment Statute to be constitutional, the trial court agreed that issues remained concerning causation, and granted partial summary judgment to Clure with respect to the non-party.

Both parties appealed. For the reasons that follow, we affirm the judgment of the trial court regarding JSP's motion for summary judgment, reverse the judgment of the trial court regarding JSP's notice of non-party fault, and vacate and remand the trial court's order regarding Clure's constitutional claim on cross-appeal.

*Case No. S17A0811*

1. JSP raises two issues on appeal, contending that the trial court erred in denying its motion for summary judgment and granting partial summary judgment to Clure concerning JSP's notice of non-party fault.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant or denial of a motion for summary judgment de novo, and "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) Cowart v. Widener, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

Woodcraft by MacDonald v. Ga. Cas. and Sur. Co., 293 Ga. 9, 10 (743 SE2d 373) (2013). See also American Multi-Cinema v. Brown, 285 Ga. 442, 444-445 (2) (679 SE2d 25) (2009). "The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact." (Citation omitted.) Ansley v. Raczka-Long, 293 Ga. 138, 140 (2) (744 SE2d 55) (2013). Furthermore, "the trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable." (Citations and punctuation omitted.) The Landings Assn. v. Williams, 291 Ga. 397, 399 (728 SE2d 577) (2012). With these principles in mind, we review JSP's claims.

(a) *Motion for Summary Judgment*

JSP alleges that the trial court erred in denying its motion for summary judgment on Clure's negligence claims because: (i) JSP had no knowledge of the hazard; (ii) Steve Wilbur, the person who removed the limb, was not an agent or employee of JSP acting within the course and scope of his employment at the time of the incident; and (iii) Clure had superior knowledge of the hazard, failed to exercise ordinary care for her own safety, and assumed the risk by

3

getting too close to a known hazard. However, viewing the evidence in the light most favorable to Clure, we agree with the trial court that genuine issues of material fact remain as to all three of these issues.

The record shows that, at all relevant times, Clure was a tenant of Johnson Street Apartments, a complex in Bremen, Georgia, that was owned and operated by JSP. JSP was owned and managed by Dan and Elaine Cartwright, and their two sons, Chris and John.

Sometime in early 2013, a limb fell onto JSP's property from a tree located on a neighboring lot. Other tree limbs had fallen onto the property during storms in the past, including some from the adjacent property, and the Cartwrights took action to remove those branches when such instances occurred. In this case, a limb fell during a storm and became suspended between the gutter of one of JSP's apartment buildings and some brush. The parties agree that the suspended limb was an open and obvious condition, yet the length of time the limb remained suspended is disputed by the parties, ranging anywhere from a few days to a few months. Clure and her neighbors were aware that the limb was stuck on the gutter, and Clure had gone so far as to warn other tenants to stay away from the limb because it was dangerous and could fall. Clure testified

4

that she left voicemails with the Cartwrights, notifying them of the suspended limb; the owners, however, deny ever receiving any such voicemails.

On the day of the incident, Clure discussed the limb with Steve Wilburn, a fellow tenant who sometimes worked as a maintenance man for JSP. Wilburn and Clure walked over to the area of the hazard, at which time Wilburn took a rope and/or string and threw it over the limb. Clure testified that she heard the gutter tear and told Wilburn to stop so she could warn the tenant inside the apartment, who suffered from mental health issues, about the loud noise. As she walked out of the apartment, Clure told Wilburn "Hold on. If you're going to do anything, just wait." She saw Wilburn pulling on the rope in a downward motion and turned to walk away from the same; though the parties dispute how far away Clure was from the hazard, they agree that the limb swung down from its perch and struck her, causing injuries.

(i) *JSP's Knowledge*

First, JSP contends that it had no knowledge of the hazard prior to the incident at issue. It is well established that Georgia premises liability law holds owner/occupiers of land liable for damages suffered by an invitee on their property where the invitee's injuries were

caused by [the owner/occupier's] failure to exercise ordinary care in keeping the premises and approaches safe. While not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. The owner/occupier owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap. The owner/occupier is not required to warrant the safety of all persons from all things, *but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises*.

(Citations omitted; emphasis supplied.) Robinson v. Kroger Co., 268 Ga. 735, 740 (493 SE2d 403) (1997). In other words, an owner/occupier is generally on constructive notice of what a reasonable inspection conducted in the exercise of ordinary care would reveal. See Ferguson v. Premier Homes, 303 Ga. App. 614, 617 (695 SE2d 56) (2010); Hagadorn v. Prudential Ins. Co., 267 Ga. App. 143, 146 (598 SE2d 865) (2004). However, "one is not chargeable with negligence in failing to discover and remedy a danger in the property which he could not have discovered by the exercise of ordinary care, or which has not existed for

6

a sufficient time to charge him with the duty of discovering it." (Citation and punctuation omitted.) Ferguson, 303 Ga. App. at 617.

Construing the evidence in favor of Clure, genuine issues of material fact remain as to whether JSP had either actual or constructive notice of the hazardous condition on its property. First, as discussed in more detail below, there is a genuine issue of material fact as to whether Wilburn acted as JSP's agent when removing the limb; if so, then any knowledge about the hazard posed by the limb and its removal could be imputed to JSP. Moreover, there is a question of fact as to whether JSP knew about the limb even aside from Wilburn's knowledge. As discussed above, there is a dispute in the evidence as to whether Clure notified the property owners of the presence of the limb by leaving them voicemails concerning the tree limb. Also, while there is evidence that the owners conducted inspections of the property after major storms, there is a dispute as to whether: (1) a reasonable inspection was conducted between the time the limb in question became suspended (which evidence suggests may have occurred after a major storm) and Clure's injuries; and (2) whether a sufficient amount of time existed for JSP to discover the hazard prior to Clure's injuries. Indeed, the record is filled with contradictory sworn testimony from

7

the parties and lay witnesses concerning these matters, raising credibility issues which cannot be resolved on summary judgment. See Jones v. Howard, 153 Ga. App. 137, 142 (264 SE2d 587) (1980).

(ii) *Steve Wilburn's Employment Status*

JSP next contends that the trial court erred in denying summary judgment because Steve Wilburn was not an employee acting within the course and scope of his employment at the time he decided to remove the tree limb from the gutter; therefore, according to JSP, Wilburn's actions cannot be imputed onto JSP under the doctrine of respondeat superior.

Typically, "[q]uestions of the existence and extent of an agent's authority are generally for the triers of fact. When an alleged principal, by acts or conduct, has knowingly caused or permitted another to appear as his agent, he will be estopped to deny the agency, to the injury of third persons." (Citations and punctuation omitted.) Williams v. Dept. of Corrections, 224 Ga. App. 571, 576 (481 SE2d 272) (1997). Furthermore, while

> [a] master rarely employs a servant with the expectation that he will commit a negligent or wilful tort . . . if the act is done in the prosecution of the master's business, the master will be liable . . . . The test is whether the tort was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. If a servant steps aside from his master's business

8

to do an act entirely disconnected from it and injury to another results, the master is not liable. Where the tort is entirely personal to the employee, it is not within the scope of his employment and the employer is not liable.

(Citations omitted.) Reynolds v. L & L Mgmt., 228 Ga. App. 611, 612 (492 SE2d 347) (1997).

Here, the evidence shows that a question of fact remains as to whether Wilburn was an employee working within the course and scope of his employment at the time of the incident. It is undisputed that Wilburn had an on-again-off-again working relationship with JSP as the maintenance man for the property at issue. This is emphasized by James Cartwright, wherein he admitted that during 2013, JSP would have Wilburn perform tasks around the property "as needed." Furthermore, there is evidence that Wilburn held himself out as the apartment complex's maintenance man to other tenants as late as March 2013. During that same time period, Elaine Cartwright instructed at least one tenant that she could "go to Cynthia [Clure] or Steve [Wilburn]" if she had any issues with her apartment. This evidence creates an issue of fact as to whether Wilburn was an agent of, or employed by JSP at the time of the incident.

As to whether Wilburn was working within the course and scope of his

employment, Wilburn testified that he would perform odd jobs around the property and would not always ask permission from the owners prior to beginning a maintenance task if he determined that task to be within his job description. Additionally, Clure testified that she witnessed Wilburn removing tree limbs from the parking lot prior to this incident. Though JSP points to evidence contradicting this testimony, such contradictions simply underline the existence of genuine issues of material fact that are for a jury to decide. Based on the foregoing, a genuine issue of material fact remains as to whether Wilburn was an employee acting within the course and scope of his employment at the time of the incident[1] and, also, raises the question of whether his knowledge of the hazard could be imputed to JSP.

(iii) *Clure's Knowledge/Negligence*

Finally, JSP argues that Clure's knowledge of the hazard created by the suspended tree limb was equal to or greater than that of JSP's, therefore precluding her from recovering on her negligence claims. We agree that the record shows Clure was clearly aware of the tree limb and testified that she

---

[1] JSP also alleges that, even if Wilburn had been working for JSP at the time of the incident, he was an independent contractor, making JSP liable for Wilburn's actions only if it controlled the time, manner or method of his work. However, this argument was not raised below or ruled on by the trial court and therefore is not properly before us on review. See Pfeiffer v. Ga. Dept. of Transp., 275 Ga. 827 (2) (573 SE2d 389) (2002).

understood the dangers it posed by it being suspended in the air. "But it is a plaintiff's knowledge of the specific hazard which precipitates [the injury] which is determinative, not merely her knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which she observes and avoids." (Citation, punctuation omitted.) Lore v. Suwanee Creek Homeowners Assn., 305 Ga. App. 165, 170 (1) (b) (i) (699 SE2d 332) (2010). In other words, Clure was not injured by the chance falling of the suspended tree limb — a possibility of which she was aware; instead, she was injured when the limb swung off the gutter while Wilburn was attempting to remove it. Wilburn had superior knowledge of his own plans and actions with respect to removing the limb and the danger posed by such removal, a knowledge that would be imputed to JSP if Wilburn was its agent. Thus, although the record shows Clure had some knowledge of the general hazard, we cannot conclude as a matter of law that her knowledge of the "specific hazard" was equal to or greater than JSP's; consequently, a jury question remains as to this issue.

JSP also alleges that Clure was contributorily negligent as she failed to exercise ordinary care for her own safety in avoiding the falling limb. It is well established that "the 'routine' issues of premises liability, i.e., the negligence of

11

the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed." Robinson, 268 Ga. at 748.

Taking into account all the circumstances existing at the time and place of Clure's injuries, and construing the evidence in favor of Clure, we cannot say that the evidence of Clure's alleged contributory negligence is plain, palpable and undisputed. Here, the record shows a dispute as to Clure's proximity to Wilburn and the tree limb at the time he was attempting to remove the hazard. Clure also testified that she was walking away from the hazard at the time it fell. Significantly, Wilburn testified on deposition that the tree limb fell so quickly, he was unsure that Clure had enough time to see it fall, raising a question as to whether Clure could have avoided the falling limb in the first place. Consequently, we conclude that a jury question remains as to whether Clure exercised ordinary care for her own personal safety on the day of the incident.

Finally, JSP argues that Clure assumed the risks associated with the limb removal by entering "the danger zone" as Wilburn was removing the limb. Assumption of the risk bars a plaintiff's recovery when a defendant establishes

that a plaintiff, "'without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.'" (Citation and punctuation omitted.) Muldovan v. McEachern, 271 Ga. 805, 807-808 (523 SE2d 566) (1999). In order to successfully assert this affirmative defense, the defendant "must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." (Citations omitted.) Id. Put simply, "assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." (Citation and emphasis omitted.) Id.

We agree with the trial court that genuine issues of material fact remain as to whether Clure had actual knowledge of, and appreciated the risks associated with, the danger related to Wilburn's removal of the tree limb from its perch, and voluntarily exposed herself to those risks. Once again, because there are disputes in the evidence as to what occurred immediately preceding the limb's fall — namely, Wilburn's actions, Clure's location at the time in

13

question and whether she could have seen the limb fall from the gutter — we cannot say, as a matter of law, that Clure assumed the risk.

Based on the foregoing, the trial court did not err in denying JSP's motion for summary judgment on Clure's negligence claims.

(b) *Apportionment Claim*

JSP filed a notice of non-party fault pursuant to OCGA § 51-12-33, contending that the jury should be allowed to allocate fault to the Smiths, the owners of the adjacent property, because the limb that caused Clure's injuries came from a dead tree on the Smiths' property. In her partial motion for summary judgment, Clure alleged that there was no competent evidence to show that the Smiths knew of a dangerous condition for which they could be held liable. In granting this portion of Clure's motion, the trial court found the Smiths' alleged acts or omissions "were too removed to be a proximate cause of [Clure's] injuries." JSP alleges that the trial court's ruling was in error. We agree.

Pursuant to OCGA § 51-12-33 (c), "[i]n assessing percentages of fault, the trier of fact *shall* consider the fault of all persons or entities who *contributed* to the alleged injury or damages, regardless of whether the person or entity was,

14

or could have been, named as a party to the suit." (Emphasis supplied.) A person is "considered to have contributed to the alleged injury where that person is shown to have 'breach(ed) . . . a legal duty in the nature of (a) tort that is owed for the protection of the plaintiff, the breach of which is a proximate cause of his injury.'" Martin v. Six Flags Over Ga. II, L.P., 301 Ga. 323, 337 (III) (801 SE2d 24) (2017) (quoting Zaldivar v. Prickett, 297 Ga. 589, 595 (1) (774 SE2d 688) (2015)). Indeed, "the apportionment statute permits consideration, generally speaking, of the 'fault' of a tortfeasor, notwithstanding that he may have a meritorious affirmative defense or claim of immunity against any liability to the plaintiff." Zaldivar, 297 Ga. at 598.

While it is the defendant's burden to establish a rational basis for apportioning fault to a non-party, whether the non-party contributed to the alleged injury is a question of fact for a jury to decide. See Six Flags Over Ga. II, L.P. v. Martin, 335 Ga. App. 350, 364-365 (780 SE2d 796) (2015), rev'd on other grounds, Martin, 301 Ga. at 341; Couch v. Red Roof Inns, Inc., 291 Ga. 359 (1) (729 SE2d 378) (2012). Finally, "it is axiomatic that questions regarding proximate cause are 'undeniably a jury question' and may only be determined by the courts 'in plain and undisputed cases.'" (Citations omitted.)

15

Ontario Sewing Machine Co. v. Smith, 275 Ga. 683, 687 (572 SE2d 533) (2002).

Here, there is evidence that: lay witnesses saw numerous dead or decaying trees on the Smiths' property prior to the incident at issue; limbs from other dead trees located on the Smiths' land had fallen onto JSP's property prior to the incident at issue; John Cartwright had a conversation with Mr. Smith concerning the removal of dead trees from the Smiths' property, and Mr. Smith subsequently sought bids for the trees' removal; the limb which caused Clure's injuries had fallen from a tree on the Smiths' property that was conspicuously dead and decaying prior to the incident; and that at least one of JSP's tenants saw the limb at issue after it had fallen and noticed it was dead. Furthermore, as discussed above, a question of fact remains as to how long the limb had been suspended on the apartment gutter prior to this incident.

Based upon the record before this Court, there are clearly questions of fact as to: whether the Smiths had notice of the dead and decaying trees on their property, which could impart a legal duty on them to act, see Willis v. Maloof, 184 Ga. App. 349 (2) (361 SE2d 512) (1987); and whether Clure's injuries were reasonably foreseeable under the circumstances of this case. Accordingly, the

16

trial court's grant of partial summary judgment as to the apportionment of fault to the Smiths is reversed.

*Case No. S17X0812*

2. In her cross-appeal, Clure alleges that the trial court erred by upholding Georgia's Apportionment Statute (OCGA § 51-12-33) as constitutional because, she alleges, the statute deprives non-parties of their rights to due process and equal protection. JSP argues that Clure lacks standing in which to challenge the statute. We agree with JSP, as Clure is not among the class of non-party persons impacted by the statute. See <u>Bell v. Austin</u>, 278 Ga. 844, 846 (2) (a) (607 SE2d 569) (2005) ("A party will not be heard to complain of the violation of another person's constitutional rights." (citation and punctuation omitted)). See also <u>Feminist Women's Health Center v. Burgess</u>, 282 Ga. 433, 434 (1) (651 SE2d 36) (2007) ("As a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights.").

Because Clure lacked standing to bring a summary judgment motion regarding the constitutionality of Georgia's Apportionment Statute as it applies to non-parties, the trial court lacked jurisdiction over this matter and

17

consequently erred in entering an order addressing the claim on the merits. Accordingly, we vacate the judgment of the trial court and remand this matter with direction that the court dismiss this portion of Clure's motion for partial summary judgment.  See generally <u>Perdue v. Lake</u>, 282 Ga. 348 (2) (c) (647 SE2d 6) (2007).

<u>Judgment affirmed in part and reversed in part in Case No. S17A0811.</u> <u>Judgment vacated and case remanded with direction in Case No. S17X0812.</u> <u>Hines, C. J., Melton, P. J., Benham, Nahmias, Blackwell, Boggs, Grant, JJ., and</u> <u>Judge Jane C. Barwick concur.  Peterson, J., not participating.</u>

Decided September 13, 2017.

Negligence. Haralson Superior Court. Before Judge Murphy.

Bovis, Kyle, Burch & Medlin, W. Randal Bryant, Wayne S. Tartline, for appellant.

Slappey & Sadd, James N. Sadd, Edward M. Wynn III, for appellee.

Hawkins, Parnell, Thackston & Young, Christopher S. Keith, Charles B. Carmichael, amici curiae.