**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 15, 2025

S25G0389. SMG CONSTRUCTION SERVICES, LLC v. COOK.

BETHEL, Justice.

While working as an independent contractor installing cabinetry in a second-story bathroom of an active residential construction project, Daniel Cook fell from an exposed ledge resulting in serious injuries. At the time of his fall, Cook was attempting to straighten an air hose while moving backward toward the exposed ledge he had previously observed outside the bathroom. Cook filed suit against SMG Construction Services, the owner of the property, alleging, among other things, that SMG's failure to maintain a safe premises caused his injuries. SMG moved for summary judgment, and the trial court determined that, because Cook had actual knowledge of the exposed ledge from which he fell after voluntarily approaching, he was barred from recovery. On

appeal, the Court of Appeals reversed, concluding that, although Cook knew of the exposed ledge, evidence that "existing conditions affected his ability to perceive [the unsecured ledge's] exact location and appreciate the specific risk it posed to him" created a genuine issue of material fact as to whether Cook's knowledge of the hazard was equal to or greater than SMG's. *Cook v. SMG Constr. Servs., LLC*, 373 Ga. App. 354, 358 (2024). For the reasons explained below, we conclude that the decision of the Court of Appeals conflated the concepts of actual knowledge and constructive knowledge and erroneously relied on principles applicable to constructive knowledge to erroneously conclude that a question of material fact exists with respect to whether Cook had actual knowledge of the hazard in this case. And because the Court of Appeals stopped its analysis at that erroneous conclusion, it did not consider all the elements of SMG's affirmative defenses. So we vacate and remand for further proceedings.

The legal standard applicable to motions for summary judgment is well settled. On appeal from a ruling on a motion for

summary judgment, this Court conducts a de novo review, "view[ing] the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Johnson St. Props., LLC v. Clure*, 302 Ga. 51, 52 (2017) (quotation marks omitted). Under OCGA § 9-11-56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A defendant may prevail on a motion for summary judgment by "presenting evidence negating an essential element of the plaintiff's claims" or by "point[ing] out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the [plaintiff's] case." *Cowart v. Widener*, 287 Ga. 622, 623 (2010) (citations and punctuation omitted). A defendant also may prevail on summary judgment by presenting undisputed evidence that establishes an affirmative defense. See *Miller v. Turner Broadcasting Sys.*, 339 Ga. App. 638, 643 (2016).

3

In support of its motion for summary judgment, SMG highlighted evidence concerning Cook's knowledge of the absence of a guardrail.[1] Specifically, SMG pointed to Cook's deposition testimony showing that Cook was installing cabinets in a second-floor bathroom of the construction site; that the bathroom was located off an "open foyer" area within one to two steps of the exposed ledge; that Cook, from his own observations,[2] "knew [the ledge] was open" and did not have a guardrail; and that Cook "could see where [the ledge] dropped off." This evidence, SMG argued, supported the grant of summary judgment for several reasons. First, SMG asserted that, because Cook was an independent contractor, he was responsible for determining for himself the safety (or lack thereof) in his workspace. Second, SMG argued that Cook's testimony showed he had actual knowledge of the open and obvious unguarded ledge and that testimony, coupled with his admission

---

[1] A more detailed recitation of the underlying facts can be found in the opinion of the Court of Appeals. See *Cook*, 373 Ga. App. at 355–56.

[2] Cook's deposition testimony indicated that he passed through the "open foyer" area at the top of the stairs at least seven times on the morning of his fall.

4

that he fell off the ledge while shuffling backwards in the ledge's direction, established that Cook failed to exercise ordinary care for his own safety. And third, SMG contended that Cook's knowledge of the hazard was at least equal to its own such that SMG owed Cook no duty to warn or otherwise protect him against the risk posed by the exposed ledge. he trial court granted summary judgment to SMG, finding both that Cook "had equal knowledge to [SMG] of the hazard" and that Cook failed to exercise reasonable care for his own safety. And pointing to Cook's deposition testimony that he "was actually aware of the lack of railing on the ledge he fell from but did not give it a second thought as it was not in his direct workspace," the trial court found that Cook had "actual knowledge of the hazard" and that "no further inquiry into [SMG's] liability [was] required."

Cook appealed and the Court of Appeals reversed. See *Cook*, 373 Ga. App. at 361. In doing so, the court organized its analysis around the question of whether Cook "'lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of'" SMG. Id. at 356 (quoting *Robinson*

5

*v. Kroger Co.*, 268 Ga. 735, 748–49 (1997)). After acknowledging Cook's admitted and likewise undisputed knowledge of the exposed ledge, the court reasoned that the ledge was a mere "generally prevailing hazard" and that SMG was required to show Cook's actual knowledge of "the proximity of the balcony's edge to the area on the second floor where he was working." *Cook*, 373 Ga. App. at 357–59. And pointing to other testimony from Cook that certain conditions affected his ability to perceive the exact point at which the ledge ended, the court concluded that genuine issues of material fact existed "as to whether Cook's knowledge of the specific hazard … was equal to or greater than SMG's, and whether he exercised ordinary care for his own safety under the circumstances." Id. at 358–59. We granted certiorari to address that holding.

We begin our analysis with the principles of premises liability law applicable to this case. As with other varieties of negligence claims, plaintiffs seeking to hold landowners liable for damages on a premises-liability theory must show four elements: duty, breach of

6

that duty, causation, and damages.[3] See *Tyner v. Matta-Troncoso*,

---

[3] The Court of Appeals here indicated, without further explanation, that it was "analyz[ing] this case under the well-established body of law applicable to slip-and-fall or trip-and-fall actions," and went on to apply the oft-cited standard from *Robinson*, 268 Ga. at 748–49: "[T]o recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Cook*, 373 Ga. App. at 356. Notably, SMG did not advance the argument that its evidence demonstrated Cook's inability to prove the elements of the *Robinson* standard. Nor did the Court of Appeals indicate why a framework tailored to slip-and-fall and trip-and-fall cases was well-suited to a case devoid of any evidence of slipping or tripping. Nevertheless, it is true that this Court has emphasized the *Robinson* elements in premises liability cases. See, e.g., *Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2009) (describing the *Robinson* elements as a "refined" test of liability in premises liability cases premised on a slip-and-fall). It is worth noting, however, that the *Robinson* elements do not encompass all the essential elements of a premises liability claim — that is, duty, breach, causation, and damages. The first of these elements relates to only one of those essential elements — the breach element. See *Givens v. Coral Hospitality-GA, LLC*, 317 Ga. 282, 283 (2023) (Pinson, J., concurring in grant of motion to withdraw appeal). And the second doesn't deal at all with the essential elements of a premises liability claim, but instead concerns "two related defenses to liability rooted in contributory negligence," namely, voluntary negligence and casual negligence (referred to in some of our decisional law as "causal negligence"). See id. See also *Robinson*, 268 Ga. at 738 n.2 (noting that the Second Restatement of Laws, Torts defines "casual negligence" as a plaintiff's "failure to pay reasonable attention to his surroundings so as to discover the danger created by the defendant's negligence, or to exercise reasonable competence, care, diligence, and skill to avoid the danger when it is perceived, or to make such preparations as a reasonable man would regard as necessary to enable him to avoid a possible future danger" (quotation marks omitted)). Thus, depending on the particular arguments at issue, the *Robinson* framework may not be dispositive, and courts should take care to address the substance of the arguments actually advanced by the parties, rather than mechanically applying the *Robinson* framework simply because the case could be characterized as one involving a slip-and-fall.

305 Ga. 480, 484 (2019). Under OCGA § 51-3-1, a landowner owes to an invitee a duty of ordinary care "in keeping the premises and approaches safe," and a landowner may be liable for damages suffered by an invitee whose injuries "were caused by [the landowner's] failure to exercise ordinary care" in doing so. *Johnson St. Props., LLC*, 302 Ga. at 53 (quotation marks omitted). In this context, we have explained that

> the true ground of liability is the [landowner's] superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.

*Landings Assn. v. Williams*, 291 Ga. 397, 399 (2012) (alteration adopted and quotation marks omitted). See also *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1991) ("The proprietor is not the insurer of the invitee's safety, but is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge." (citation omitted)). Thus, premises-liability litigation often turns on issues related to the knowledge of the

8

hazard possessed by the defendant, the plaintiff, or both. For example, if a plaintiff is unable to prove the defendant-landowner had knowledge of the hazard in question — either actual or constructive — he is unable to prove the breach element of his claim, and his claim fails. See *Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2009) (a plaintiff bears the burden of showing that the defendant had knowledge of the hazard); see also *Givens v. Coral Hospitality-GA, LLC*, 317 Ga. 282, 283 (2023) (Pinson, J., concurring in grant of motion to withdraw appeal) ("If a proprietor did not know about the hazard in question even having exercised the requisite degree of care to identify risks to invitees' safety on the premises, it has not breached its duty of care.").

The knowledge possessed by the plaintiff likewise "is relevant to the ultimate question of liability," *Ga. CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 727 n.7 (2023), and is essential to the frequently raised affirmative defenses of assumption of the risk and contributory negligence. See *Muldovan v. McEachern*, 271 Ga. 805, 807–08 (1999) (a defendant asserting an assumption of the risk

defense must establish, among other things, that the plaintiff had actual knowledge of the danger); *Robinson v. Kroger*, 268 Ga. 735, 748–49 (describing related defenses of voluntary negligence and casual negligence, both rooted in contributory negligence, and explaining that voluntary negligence is the "intentional and unreasonable exposure of self to a hazard of which [the] plaintiff has knowledge" and that casual negligence is "the failure to exercise ordinary care for personal safety" to discover and avoid the hazard at issue). Whether a landowner argues that a plaintiff had actual knowledge or constructive knowledge of the hazard, our case law requires evidence establishing the plaintiff's knowledge of "the specific hazard which precipitate[d] the injury" and "not merely [his] knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which [he] observes and avoids." *Clure*, 302 Ga. at 56 (citation and punctuation omitted). In other words, to prove either actual or constructive knowledge on the part of the plaintiff, the landowner must show the plaintiff's knowledge of the dangerous condition that was the proximate cause of his injuries.

10

See id. But of course, questions related to the existence and extent of either party's knowledge should be decided as a matter of law only when the evidence of that knowledge "is plain, palpable, and undisputed." See *Robinson*, 268 Ga. at 748 ("[T]he 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and … summary judgment is granted only when the evidence is plain, palpable, and undisputed.").

Turning to the case at hand, SMG relied on evidence purporting to show Cook's knowledge of the exposed ledge in an effort to demonstrate its entitlement to summary judgment on an affirmative defense. Specifically, SMG's first argument — that Cook's independent-contractor status imposed upon him a responsibility to determine for himself the safety of his workspace — implicates the affirmative defense of assumption of the risk. See *Sinyard v. Ga. Power Co.*, 363 Ga. App. 195, 208 (2022) ("The hired worker exception is a narrow, specific expression of the doctrine of

11

assumption of the risk" that "can apply when the property is an inherently and obviously unsafe area, such as a construction or demolition site, and the worker is hired to assist in the repair, construction, or demolition of the site." (quotation marks omitted)). See also *Holland v. Durham Coal & Coke Co.*, 131 Ga. 715, 719 (1908) ("The servant assumes the ordinary risks and dangers of his employment that are known to him, and those that might be known to him by the exercise of ordinary care and foresight. When he engages in the work of making a place that is known to be dangerous, safe, or in a work that in its progress necessarily changes the character for safety of the place in which it is performed as the work progresses, the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary and known dangers of such a place, and by his acceptance of the employment the servant necessarily assumes them." (quotation marks omitted)); *Elsberry v. Ivey*, 209 Ga. App. 620, 621 (1993) ("construction … sites by their inherent nature are naturally temporary and in a state of continuous alteration"). And its second

argument — that evidence of Cook's knowledge coupled with his testimony that he fell off the ledge while shuffling backwards established his failure to exercise ordinary care for his own safety — implicates the affirmative defense of voluntary negligence, a type of contributory negligence. See *Robinson*, 268 Ga. at 737–38 (cases in which "the invitee had admitted knowledge of the hazardous condition and, with full appreciation of the danger, had chosen a course of conduct which resulted in injury as a result of the hazardous condition" involved affirmative defense of "voluntary negligence"). To prevail on either defense, SMG must first establish that Cook had knowledge of the hazard at issue.

SMG proceeded on theories of both actual knowledge and constructive knowledge. A person has actual knowledge of a hazard where the evidence shows that he saw or was actually aware of the hazard at issue.[4] See id. at 767 (collecting cases in which actual

---

[4] Actual knowledge may be proven by direct or circumstantial evidence. See *Golden v. National Life & Accident Ins. Co.*, 189 Ga. 79, 86 (1939) ("While it may be difficult to prove the existence of actual knowledge on the part of one who denies it (because in such case direct evidence is not attainable, unless he

knowledge was shown). Constructive knowledge, by contrast, is knowledge that was not but could have been acquired in the exercise of reasonable care. See id. at 743; *Golden v. National Life & Accident Ins. Co.*, 189 Ga. 79, 86 (1939) (Constructive knowledge is "knowledge which might have been acquired by diligence but was not acquired."). See also *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 US 178, 184–85 (2020) ("[T]o have 'actual knowledge' of a piece of information, one must in fact be aware of it. … In everyday speech, 'actual knowledge' might seem redundant; one who claims 'knowledge' of a topic likely means to suggest that he actually knows a thing or two about it. But the law will sometimes impute knowledge—often called 'constructive' knowledge—to a person who fails to learn something that a reasonably diligent person would have learned."); *Knowledge*, Black's Law Dictionary (12th ed. 2024) (defining "actual knowledge as "[d]irect and clear knowledge," and

---

admits it), nevertheless even actual knowledge can be demonstrated by the proof of circumstances which will admit of no other reasonable conclusion than that the party who asserts his ignorance of a given fact actually knew it, and that his denial is untrue." (quotation marks omitted)).

14

"constructive knowledge" as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person."). As detailed above, SMG pointed to Cook's deposition testimony that he was working on the second floor of the construction site, that his work area was located off an "open foyer" area within one to two steps of the unguarded ledge, and that Cook, from his own observations, "knew [the ledge] was open" and "could see where it dropped off." We agree with the trial court that Cook's testimony about his own personal observations of the unguarded ledge establishes that he had actual knowledge of the unguarded ledge.

This evidence also shows that Cook had actual knowledge of the specific hazard that was the proximate cause of his injuries. The Court of Appeals posited that the specific hazard here was not simply the missing guardrail and exposed ledge, which the court viewed as the "generally prevailing hazard." *Cook*, 373 Ga. App. at 357. Rather, the court reasoned that the specific hazard was actually "the proximity of the balcony's edge to the area on the second floor

15

where [Cook] was working" and that questions of fact remained as to Cook's knowledge of that detail. Id. at 358–59. But Cook agreed in his response to SMG's motion for summary judgment that "[i]t is undisputed the hazard was the unguarded balcony." Indeed, it was Cook's fall from, not his mere proximity to, the unguarded ledge that caused his injury, and his testimony is direct evidence that he had actual knowledge of its existence. A plaintiff's misapprehension of the precise details of a known hazard does not negate his actual knowledge of that hazard. See *Landings Assn.*, 291 Ga. at 399–400 (where plaintiff was killed by large alligator in community's lagoon, testimony that plaintiff was aware that alligators were present in the community proved plaintiff's knowledge of hazard, notwithstanding absence of evidence showing plaintiff's knowledge that alligators of the size that caused her death were present in the community or living in the lagoon in question)[5]; *Downes v.*

_____

[5] The dissent in *Landings Assn.* advanced a theory similar to that urged by Cook and adopted by the Court of Appeals in this case, arguing that questions of fact regarding the plaintiff's knowledge existed because "there was no 'competent evidence' that the decedent knew there were alligators over

16

*Oglethorpe University, Inc.*, 342 Ga. App. 250, 254 (2017) ("[I]t is the body of water per se that presents an obvious risk of drowning, not its attendant conditions such as a strong unseen current or a deep unknown hole." (quotation marks omitted)); *Saunders v. Indus. Metals & Surplus, Inc.*, 285 Ga. App. 415, 419–20 (2007) (no genuine issue of material fact regarding plaintiff's knowledge of specific hazard where plaintiff knew of skylights but fell "because he miscalculated his distance to the hazard" before stepping backwards). But see *Lore v. Suwanee Creek Homeowners Assn.*, 305 Ga. App. 165, 170–71 (2010) (genuine issue of material fact regarding plaintiff's knowledge of specific hazard existed where

seven feet in size living in the community or living in the lagoon in which her body was found." *Landings Assn.*, 291 Ga. at 401 (Benham, J., dissenting). The majority in that case specifically rejected this argument, concluding that "[a] reasonable adult who is not disabled understands that small alligators have large parents and are capable of moving from one lagoon to another[.]" Id. at 400. In other words, a plaintiff cannot negate his knowledge of a hazard by defining that hazard so narrowly that the defendant must show the plaintiff actually knew of each and every detail underlying the hazard that caused the harm. An alligator, like an open ledge, poses only one hazard, and actual knowledge requires awareness of the hazard, not a crystal ball. Cf. *First Pacific Management Corp. v. O'Brien*, 184 Ga. App. 277, 281 (1987) ("One cannot admit knowledge of the presence of a mine field but claim ignorance because he was not aware that a mine was placed at the point he decided to enter it.").

17

evidence showed that plaintiff had observed sinkhole numerous times but was injured when the ground at least four feet from the edge of the sinkhole gave out).

Cook argues, and the Court of Appeals concluded, that questions of fact concerning SMG's knowledge nevertheless exist because Cook testified that conditions within the premises "created an optical illusion that camouflaged the closeness of the balcony edge to [Cook's] work area." *Cook*, 373 Ga. App. at 357–58. In other words, Cook claims he did not have knowledge of the precise point at which the balcony dropped off. But this line of reasoning relies on inapposite case law where, unlike the case at hand, there was no evidence of the plaintiff's actual knowledge of the hazard at issue. Rather, those cases concerned the existence of a plaintiff's *constructive* knowledge,[6] focusing on whether the hazard at issue

---

[6] See, e.g., *Myers v. Harris*, 257 Ga. App. 286, 287–88 (2002) (genuine issue of material fact regarding plaintiff's knowledge of dangerous condition where plaintiff "did not know why she fell" and "did not see where the floor ended"); *Strauss v. City of Lilburn*, 329 Ga. App. 361, 362, 364 (2014) (genuine issue of material fact regarding plaintiff's knowledge of specific hazard where plaintiff "just didn't see the step" and the "change in elevation was essentially

was in "plain view" or was sufficiently "open and obvious" with the ultimate goal of ascertaining whether the invitee, in the exercise of ordinary care, should have seen and avoided the hazard. See *Robinson*, 268 Ga. at 743 ("[T]he 'plain view' doctrine is applied to a hazard in plain view at a location where it is customarily found and can be expected to be, but which the invitee professes not to have seen prior to the fall. Even though the invitee had no actual knowledge of the hazard before being injured, the invitee should have known of the hazard's presence."); see also *Givens*, 317 Ga. at 284 ("[T]he question whether any given hazard was sufficiently obvious is a question whether the invitee reasonably could have seen and avoided it in the exercise of ordinary care."). Evidence that

---

camouflaged"); *Pinder v. H & H Food Servs., LLC*, 326 Ga. App. 493, 499, 502 n.9 (2014) (genuine issue of material fact regarding whether plaintiff should have seen hazard where plaintiff did not know about an "unexpected change in [ramp's] elevation" and the lighting was inadequate); *Simon v. Murphy*, 350 Ga. App. 291, 294–95 (2019) (genuine issue of material fact regarding plaintiff's knowledge of specific hazard where plaintiff, who was injured by damaged crossbar on cart corral, had general knowledge of crossbar but testified that "she did not see the damage" to it before her fall); *Hagadorn v. Prudential Ins. Co.,* 267 Ga. App. 143, 146 (2004) (genuine issue of material fact existed because, although plaintiff had general knowledge of culvert, she did not see "that the pavement near the culvert sloped dramatically" and the hazard was the specific steep grade of the cement).

certain conditions obscured the plaintiff's view of a purportedly obvious hazard may indeed demonstrate the existence of a genuine issue of material fact as to whether the plaintiff *should have* seen the hazard in the exercise of reasonable care — that is, whether the plaintiff had constructive knowledge of the hazard. See, e.g., *Strauss v. City of Lilburn*, 329 Ga. App. 361, 362, 364 (2014) (genuine issue of material fact existed where plaintiff did not see a step and the "change in elevation was essentially camouflaged"); *Pinder v. H & H Food Servs., LLC*, 326 Ga. App. 493, 498–99, 501 (2014) (genuine issue of material fact where plaintiff testified she did not detect a change in elevation on a sidewalk because lighting was inadequate). But this evidence is insufficient to create a question of material fact as to the plaintiff's actual knowledge, the primary theory on which SMG's motion for summary judgment is based.

Our conclusion that no issue of material fact exists with respect to Cook's actual knowledge of the specific hazard at issue is not the end of the inquiry because knowledge is only one element of the affirmative defenses raised in SMG's motion for summary judgment

20

and ruled on by the trial court. While expressing no opinion on the strength or resolution of such arguments, we are able to imagine that the conditions Cook suggests impaired his perception of the hazard may be relevant to the elements of SMG's affirmative defenses. But we leave it to the Court of Appeals to determine on remand whether, in light of our conclusion that SMG has established Cook's actual knowledge of the hazard at issue, SMG has also shown the absence of any question of material fact concerning the other elements of its affirmative defenses.

*Judgment vacated and case remanded. All the Justices concur, except Peterson, C.J., and Ellington and McMillian, JJ., who dissent.*

MᶜMILLIAN, Justice, dissenting.

Because I believe that the Court of Appeals correctly determined that there are genuine issues of material fact as to whether "Cook's knowledge of the specific hazard, namely the proximity of the balcony's edge to the area on the second floor where he was working, was equal to or greater than SMG's, and whether he exercised ordinary care for his own safety under the circumstances," *Cook v. SMG Constr. Servs., LLC,* 373 Ga. App. 354, 359 (2024), the judgment of the Court of Appeals should be affirmed. For this reason, I respectfully dissent.

The majority opinion primarily takes issue with the Court of Appeals's holding that "jury questions exist as to whether Cook's knowledge of the specific hazard, namely the proximity of the balcony's edge to the area on the second floor where he was working, was equal to or greater than SMG's." *Cook*, 373 Ga. App. at 359. I concede that reasonable minds can disagree on this issue and that the Court of Appeals (perhaps improperly) relied on some cases involving constructive knowledge in its analysis, but I believe that a

22

better reading of our precedent is that genuine issues of material fact exist as to Cook's actual knowledge of the specific hazard, even though he was aware of the general nature of the hazard.

In 2017, we expanded on the seminal case of *Robinson v. Kroger Co.*, 268 Ga. 735 (1997), in *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 56 (2017), noting that the plaintiff's clear awareness of the hazard and understanding of the dangers it posed were not the only relevant questions.[7] Instead, "it is a plaintiff's knowledge of the specific hazard which precipitates the injury which is determinative, not merely her knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which she observes and avoids." Id. (cleaned up). In *Clure*, a tree limb had fallen at the plaintiff's apartment complex and was hanging suspended between a gutter of one of the buildings and some brush, and it was

---

[7] In footnote 4 of the majority opinion, the majority cautions against "mechanically applying the *Robinson* framework simply because the case could be characterized as one involving a slip-and-fall," but the cases that the majority primarily relies upon—*Clure* and *Landings Ass'n v. Williams*, 291 Ga. 397 (2012)—themselves applied the *Robinson* framework in situations that were not the typical slip-and-fall.

undisputed that the plaintiff had knowledge of the hazard created by the suspended tree limb. Id. at 56. The plaintiff was injured when, after discussing the situation with the alleged maintenance man for the complex, the maintenance man pulled the limb down and the plaintiff, who was standing somewhere under the limb, was struck. Id. at 53. We held that "although the record shows [the plaintiff] had some knowledge of the general hazard, we cannot conclude as a matter of law that her knowledge of the 'specific hazard' was equal to or greater than [the owners of the apartment complex]; consequently, a jury question remains as to this issue." Id. at 56. In other words, a genuine issue of material fact existed as to whether the owner/occupier had knowledge superior to that of Clure of the specific hazard, in that case, the exact moment when the maintenance man would pull the limb down.

Here, the majority opinion correctly notes that Cook acknowledged his understanding that the second-floor balcony did not have a guardrail; however, the record also shows that genuine issues of material fact exist as to whether Cook had actual

24

knowledge of the specific hazard that caused his injuries, whether he "intentional[ly] and unreasonab[ly]" exposed himself to that hazard, and whether SMG had superior knowledge of the hazard. *Robinson*, 268 Ga. at 748. See *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 445 (2009). And, although the majority opinion notes that Cook agreed in responding to SMG's motion for summary judgment that "the hazard was the unguarded balcony," I do not see how this statement about Cook's knowledge of the hazard generally negates all other assertions and issues concerning the surrounding conditions and their effect on Cook's ability to perceive the edge of that unguarded balcony at the time of his fall.

Cook testified that the balcony's edge, which was not in the immediate area where he was working, was obscured by the conditions that day. Specifically, he explained that "the drywall dust, the overspray, and the cloudy day" impacted his perception of the edge and that he "thought it was further back than where it was." There is also evidence that the balcony edge was not distinct from the color of the opposing wall, causing the balcony flooring and

surrounding walls to appear to "blend together." In the course of his work, Cook "shuffle[d]" backwards, not realizing his proximity to the balcony's edge, and stepped off it, falling to the first floor and badly injuring himself. *Cook*, 373 Ga. App. at 356.

As the nonmovant, Cook's testimony must be construed in the light most favorable to him for purposes of summary judgment. See *Cowart v. Widener*, 287 Ga. 622, 624 (2010). And viewed in that light, I "cannot conclude as a matter of law that [his] knowledge of the 'specific hazard' was equal to or greater than [SMG]'s." *Clure*, 302 Ga. at 56. The record here did not clearly substantiate that Cook had knowledge of where the balcony's edge was, given "the circumstances existing at the time and place of the fall," including the presence of dust, the poor lighting in the area, and the blended coloring of the flooring and surrounding walls. See *Robinson*, 268 Ga. 735. Moreover, genuine issues of material fact also exist as to whether Cook intentionally exposed himself to the danger of falling off the balcony and whether SMG had superior knowledge of the

26

hazard.[8] See *Brown*, 285 Ga. at 445; *Strauss v. City of Lilburn*, 329 Ga. App. 361, 362 (2014) (although plaintiff acknowledged she knew there was a step in the vicinity, because there was evidence that the step was camouflaged and she did not have actual knowledge of the specific step, a jury question remained); *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 145–47 (2004) (jury question remained where conditions created an optical illusion that prevented plaintiff from appreciating danger involved).

Because a jury question remains as to whether Cook's knowledge of the specific hazard – namely the proximity of the

<hr>

[8] The majority opinion's reliance on *Landings Association, Inc. v. Williams*, 291 Ga. 397 (2012), to support that a "plaintiff's misapprehension of the precise details of a known hazard does not negate his actual knowledge of that hazard" is misplaced. In *Landings Association*, both the victim and the owner/occupier were aware of the presence of wild alligators on the property, and given the dangerous nature of these wild animals, it could not be said that the owner/occupier had superior knowledge of the danger as compared to the victim. Id. at 399. In contrast, genuine issues of material fact exist as to whether SMG, the owner and builder of the house, had superior knowledge to Cook with respect to the location of the balcony's edge and the area where Cook was working. As recounted by the Court of Appeals, "[b]efore Cook began his work, SMG's owner briefly visited the job site and spoke with him. While the owner was there, he learned that the trim work [including installing the permanent rail for the balcony] would not be done that day." *Cook*, 373 Ga. App. at 355.

balcony's edge to the area on the second floor where he was working – was equal to or greater than SMG's and whether he exercised ordinary care for his own safety in shuffling backwards under the circumstances, the trial court's grant of summary judgment here was improper. See *Clure*, 302 Ga. at 56. These are questions for the finder of fact to determine.[9]

I am particularly concerned by the majority opinion's reframing of the "actual knowledge" standard to mean knowledge of the general hazard, i.e., a balcony with no guardrails, versus knowledge of the specific hazard, i.e., the location of the edge of the balcony. In *Clure*, we made it clear that knowledge of the general hazard, i.e., the hanging tree limb, was not sufficient to require summary judgment when genuine issues of material fact existed as to the plaintiff's knowledge of the specific hazard, i.e., the moment when the maintenance man would attempt to pull down the tree

---

[9] I recognize that under the facts of this case, a factfinder could very well determine that Cook acted negligently in walking backwards towards an open balcony without looking, but applying the summary judgment standard, as we must, precludes summary adjudication.

limb. See *Clure*, 302 Ga. at 56 ("But it is a plaintiff's knowledge of the specific hazard which precipitates [the injury] which is determinative, not merely her knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which she observes and avoids." (cleaned up)).

For this reason, I would affirm the Court of Appeals's decision to reverse the trial court's judgment and respectfully dissent.

I am authorized to state that Chief Justice Peterson and Justice Ellington join in this dissent.