**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1066. GASKINS v. BERRY'S BOAT DOCK et al.

BRANCH, Judge.

James Gaskin appeals from the grant of summary judgment in favor of the defendants in a suit arising from his fall when a pipe and chain railing on a ramp to a floating dock gave way. For the reasons stated below, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of Gaskins, the record shows that Berry's Boat Dock is owned by Catherine and Robert Berry and that it operates a facility on Lake Jackson

that includes, among other things, a level pedestrian walkway and a ramp that leads to a floating dock. At the time of the accident, the lake water level was low and the floating dock was significantly lower than the walkway, causing the ramp to have a fairly steep pitch. Each side of the ramp had a series of three standing metal pipes (or posts) with chain running between them leading from the top of the ramp to close to where the ramp adjoined the floating dock. The ramp, pipe, and chains were installed by the owner in 1994 and 1995. A second similar ramp was blocked by warning tape on the day of the incident because it had collapsed.

At about 6:30 a.m. on February 5, 2012, after unloading a boat and parking his truck, Gaskin walked across the level walkway and turned and stepped onto the ramp that leads to the floating dock. As he stepped onto the ramp, Gaskin grabbed a metal post at the top of the ramp to steady himself as he started down the incline. His right foot then slipped, and as he lost his balance, he either continued to hold onto or re-grabbed one of the posts in an attempt to keep from falling down. When he did, the post broke off from the ramp, and Gaskin fell, ended up in the lake, and suffered an injury. Gaskin's fall took down pipe and chain from both sides of the ramp. Gaskins had used the same ramp to get to his boat many times in the past both when the lake

2

was equally low and when it was higher, and he had traversed the same ramp two weeks earlier when the lake was at the same lower level.

Gaskins hired a professional inspector who studied the pipe and chain railing after the incident and concluded, among other things, that the pipe and chain rail was attached to rotten wood, that the failure occurred when the bolts used to attach the pipe to the wood base "pulled straight thru the weathered and deteriorated wood," and that the wood had lost its structural integrity. He also opined that the facilities in general, including the "gangway" or ramp, were in disrepair, showed signs of lumber failure due to the wood rotting under the post connectors, and were in need of substantial maintenance and repair.

The trial court granted summary judgment in favor of the defendants for several reasons. First, Robert Berry testified that the pipe and chain railing was meant only to be decorative, not a safety handrail, and the court concluded that photographs of the ramp "show clearly that the post was not placed there for purposes of serving as a handrail but was merely one of a series of metal posts through which a chain ran, and no reasonable person would think that the chain and posts were placed there for safety purposes." Second, Gaskins could not recover because he had successfully negotiated the ramp on at least six occasions when it had a similar pitch and because

3

the condition of the ramp was "just as obvious and open to [Gaskin] as it was the owners." Third, because Gaskins admitted that his foot slipped, "he would have fallen anyway, the presence or absence of the post in this case is not material to the issue." Fourth, even if the post was a "material cause" of Gaskins' injury, and assuming that Defendants had constructive notice of the hazard, "the post is a static defect," and therefore Gaskins should have seen it and realized the risks involved. In sum, the court concluded, Gaskin had "knowledge of the danger at least equal to that of the Defendants." The court also concluded that Gaskin had not shown that the defendants violated applicable building codes and had not created a private or public nuisance.

Pretermitting whether the defendants violated building codes or created a nuisance, for the reasons that follow, we hold that the trial court erred by concluding that Gaskin had equal knowledge of the alleged defect in the railing and by concluding as a matter of fact and law that the pipe and chain railing was not a handrail meant for safety purposes.[1]

A property owner is liable to an invitee, such as Gaskin, "for injuries caused by [the property owner's] failure to exercise ordinary care in keeping the premises

---

[1] Gaskins alleges that the defect was not the ramp itself, "but the construction, maintenance and condition of the posts and chains."

and approaches safe." OCGA § 51-3-1. "'In order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.'" *Avery v. Cleveland Ave. Motel*, 239 Ga. App. 644, 645 (2) (521 SE2d 668) (1999), quoting *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997). See also *American Multi–Cinema v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009). Also, "the owner's duty to exercise ordinary care includes inspecting the premises to discover possible dangerous conditions of which the owner does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the use of the premises." *Hicks v. Walker*, 262 Ga. App. 216, 218 (585 SE2d 83) (2003) (footnote omitted); see also *Davis v. GBR Properties*, 233 Ga. App. 550, 552 (1) (504 SE2d 204) (1998) ("[A]n invitee who responds to the owner/occupier's invitation and enters the premises does so pursuant to an implied representation or assurance that the premises have been made ready and safe for the invitee's reception, and the entering invitee is entitled to expect that the owner/occupier has exercised and will

5

continue to exercise reasonable care to make the premises safe.") (citation and punctuation omitted).

Although there may be no evidence that the defendants had actual knowledge of a defect in the pipe and chain railing, there is an issue of fact as to whether they had constructive knowledge that the pipe posts were attached to rotten and deteriorated wood.

> Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident.

*Avery*, 239 Ga. App. at 645-646 (2) (citation and punctuation omitted). In *Avery*, summary judgment was properly denied in a suit involving the collapse of a handrail because the defendants "failed to sufficiently establish that procedures were in place to inspect the stair railings." Id. at 646 (2). The same is true here. At his deposition, Robert Berry testified that he did not make regular inspections of the premises; rather ""if you see anything that needs to be fixed, you fix it." He testified "there's nothing documented saying I go out there . . . every day, once a week or whatnot. It's just I'm

6

out there." Thus, the defendants did not establish as a matter of undisputed fact that they had a reasonable inspection procedure or that the procedure was carried out at the time of the accident. Accordingly, there is an issue of fact as to whether the defendants had constructive knowledge of the fact that the pipe posts were attached to rotten wood. For the same reason, there is an issue of fact as to whether Gaskin reasonably could have known of such a defect even if he did traverse the same ramp on a regular occasion. See *Paul v. Sharpe*, 181 Ga. App. 443, 446 (2) (352 SE2d 626) (1987) ("[plaintiff] was not negligent in leaning against the deceptively standing-but-loose railing") (citation omitted).

As for the argument that the pipe and chain railing only was intended for decorative use, that issue is plainly a question of fact, as is the question of whether a reasonable person in Gaskin's position would have assumed that he could steady himself by holding onto one of the posts. In other words, there is an issue of fact as to whether Gaskin unreasonably exposed himself to danger on a severely sloped ramp by holding onto one of the posts to try to prevent himself from falling.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*