**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 18, 2024

# In the Court of Appeals of Georgia

A24A0539. POLLARD v. DELOACH.

MCFADDEN, Presiding Judge.

Margie Pollard was injured on April 11, 2020, when a step broke as she descended an exterior staircase of her apartment building. She brought this action for premises liability against the building's owner, Greg Deloach. The trial court granted summary judgment to Deloach. On appeal, Pollard argues that genuine issues of material fact exist as to Deloach's liability as an out-of-possession landlord under OCGA § 44-7-14, but we agree with the trial court that this case does not fall under that Code section. Alternatively, Pollard argues that there are genuine issues of material fact about whether Deloach had superior, constructive knowledge of the hazard, rendering him liable under the general principles of premises liability set forth

in OCGA § 51-3-1. Because we agree that a fact question exists on that issue, we reverse.

1. *Facts*

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Johnson v. LT Energy*, 368 Ga. App. 439, 440 (2) (890 SE2d 320) (2023) (citation and punctuation omitted).

So viewed, the evidence shows that since 2015, Pollard and her long-time partner, Kenneth Green, have shared an apartment in the building owned by Deloach. Although only Green was on the apartment lease, the apartment management company was aware that Pollard also lived in the apartment and had raised no objection to her doing so.

Pollard's and Green's apartment was on the second floor of the building, accessible by two sets of external wooden stairs that also served another apartment unit. In 2010, Deloach had completely replaced the back staircase, but by 2020 both

2

sets of stairs were, in Green's words, in "deplorable" condition. The wood was rotting and cracked in places, the paint had peeled off of the boards to expose the screws that held the stairs together, fasteners were coming up from the boards, and the railing on the back staircase was loose.

Green and Pollard believed both staircases to be dangerous and on several occasions had complained about their condition to the company that managed the property for Deloach. Deloach, who also performed maintenance work for the management company, did not repair the back staircase or do any other maintenance on it before Pollard's fall.

On April 11, 2020, Pollard was walking down the back staircase in a normal manner when the bottom step broke apart from the frame of the staircase and flipped upward, causing Pollard to fall and injure herself. The next day, Deloach, along with an employee of the property management company who served as the apartment's property manager, looked at the step. Deloach opined in his deposition that the step broke because some of the metal fasteners holding the step together had rusted, causing them to lose their thread and slip out of the wood. The property manager opined in his deposition that the step broke because the wooden risers supporting it

had "broken off." Photographs taken on the day of Pollard's fall show some cracks on the broken step, as well as cracking around the fastener of another step in the staircase. A photograph also shows that at least one board on the staircase had, at some previous point and without Deloach's knowledge, been removed, turned over, and refastened to the staircase.

There is no written evidence of any safety inspection of the staircases in the two years preceding Pollard's fall. And neither Deloach nor anyone else from the management company inspected the external staircases on a systematic or regular basis. Instead, both Deloach and the property manager testified that they would observe the stairs on an ad hoc basis, whenever they used them while visiting the property.

2. *Applicable law*

Pollard brought her claims against Deloach under, alternatively, OCGA § 51-3-1 et seq. (setting forth general principles of premises liability governing owners and occupiers of land), and OCGA § 44-7-14 (setting forth principles governing out-of-possession landlords). These are mutually exclusive sources of liability. *Williams v.*

*Kasulka Properties*, 370 Ga. App. 653, 654 (2) (a) (898 SE2d 843) (2024). So we first consider which Code section applies in this case.

The statutory source of a landlord's liability rests on the location of the alleged cause of the plaintiff's injury. See *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 179 (2) (b) (856 SE2d 267) (2021). If the alleged cause of the injury is in an area possessed by a tenant, then OCGA § 44-7-14 governs. Id. at 179-180 (2) (b). If it is in an area possessed by the landlord, then OCGA § 51-3-1 et seq. governs. Id. at 180 (2) (b).

The alleged cause of Pollard's injury in this case was a staircase on the outside of the apartment building, which led to a landing that served two apartment units. There is no evidence that the landlord, Deloach, had "fully parted with [his] possession and the right of possession" of that staircase and landing. OCGA § 44-7-14. Instead, the staircase was a common area that remained in Deloach's control. So the general principles of premises liability set forth in OCGA § 51-3-1 et seq. govern his liability. See *Patrick v. Macon Housing Auth.*, 250 Ga. App. 806, 809 (552 SE2d 455) (2001).

3. *Liability under OCGA § 51-3-1*

The parties dispute whether Pollard was Deloach's tenant, given that she was not on the apartment lease. We do not need to reach that question because, even if Pollard was not a tenant, she was an invitee on the property for purposes of determining liability under OCGA § 51-3-1. See *Cham*, 311 Ga. at 183 (3) (evidence that an apartment landlord "expressly (or at least implicitly) authorized [the plaintiff] to reside on the premises, and that this permission benefitted [the landlord]," supported the plaintiff's classification as an invitee).

As Pollard was as an invitee, Deloach owed her a duty to "exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. To recover on her claim under OCGA § 51-3-1, Pollard must prove both that Deloach "had actual or constructive knowledge of the hazard" and that she "lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within [Deloach's] control. . . ." *Gaskins v. Berry's Boat Dock*, 334 Ga. App. 642, 644 (780 SE2d 83) (2015) (citation and punctuation omitted). These issues "are generally not susceptible of summary adjudication, and . . . summary judgment is granted [in a premises liability case] only when the evidence is plain, palpable, and undisputed." *Johnson Street*

*Properties v. Clure*, 302 Ga. 51, 57 (1) (a) (iii) (805 SE2d 60) (2017) (citation and punctuation omitted).

The evidence of the specific reason why the step broke indicates a failure of either the metal fasteners, the wooden risers, or both. While there is evidence that Deloach knew of the general poor condition of the staircase, because Green and Pollard had complained about it and because he himself had seen it, there is no evidence that he had actual knowledge of those specific defects. Instead, this case turns on whether there is evidence of Deloach's constructive knowledge.

The duty of an owner or occupier of property to exercise ordinary care in keeping the premises safe "includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge[. So] an owner/occupier is generally on constructive notice of what a reasonable inspection in the exercise of ordinary care would reveal." *Johnson Street Properties*, 302 Ga. at 53-54 (1) (a) (i) (citations, punctuation, and emphasis omitted). "[A] property owner's constructive knowledge [of a hazard] may be inferred when there is evidence that the owner lacked a reasonable inspection procedure." *Garcia v. KRC*

*Alderwood Trails*, 348 Ga. App. 84, 89 (819 SE2d 713) (2018) (citation and punctuation omitted).

An invitee such as Pollard has no comparable duty to inspect. See *Valentin v. Six Flags Over Ga.*, 286 Ga. App. 508, 510 n. 2 (649 SE2d 809) (2007); *Oliver v. Complements, Ltd.*, 190 Ga. App. 30, 31 (378 SE2d 154) (1989). And it is the invitee's "knowledge of the specific hazard which precipitates the injury which is determinative, not merely her knowledge of the generally prevailing hazardous conditions. . . ." *Johnson Street Properties*, 302 Ga. at 56 (1) (a) (iii) (citation and punctuation omitted). "[T]he crucial question[, in determining if Pollard had knowledge of the hazard,] is whether (she) should have had a full appreciation of the danger, and in the exercise of ordinary care (she) should have avoided the injury to (herself)." *Amberly Suite Hotel v. Soto*, 214 Ga. App. 72, 74 (1) (446 SE2d 778) (1994) (citations and punctuation omitted).

In granting summary judgment to Deloach, the trial court concluded that Pollard had not shown that a reasonable inspection would have revealed the defect that caused the step to break. But the burden does not shift to Pollard to make such a showing unless Deloach first demonstrates "that there is an absence of evidence to

support [the] claim that a reasonable inspection would have discovered this defect. . . ." *Padilla v. Hinesville Housing Auth.*, 235 Ga. App. 409, 411 (509 SE2d 698) (1998).

Deloach has not met that burden. The evidence, viewed most favorably to Pollard, shows that there were indications that the staircase's fasteners were failing: its railing had become loose and wood was cracking around fasteners on other steps. Compare *Padilla*, 235 Ga. App. at 410-411 (record contained evidence that an apartment's property manager had inspected the building's external staircase for safety hazards but that "no problem was readily discernible"). See generally *Sisson v. Elliott*, 278 Ga. App. 156, 158-159 (1) (628 SE2d 232) (2006) (the "appearance or character of the premises" may impose on the owner a duty to inspect for defects). And although Deloach opined that he could not have discovered the defect through a visual observation of the outside of the step, he also testified that the metal fasteners in the ten-year-old staircase could have rusted and that their strength could be tested by seeing if the step felt loose.

We also disagree with the trial court's finding that there was "evidence that a reasonable inspection took place. . . ." As stated above, there was no written evidence of any safety inspection of the staircase occurring in the two years before the step

broke, and the testimony of Deloach and the property manager, viewed most favorably to Pollard, shows that neither man engaged in any sort of regular or systematic inspection of the staircase. So Deloach "did not establish as a matter of undisputed fact that [he] had a reasonable inspection procedure [regarding the staircase] or that the procedure was carried out at the time of the accident." *Gaskins*, 334 Ga. App. at 645 (reversing summary judgment to a property owner in a case in which a chain railing broke because the wood to which it was attached had rotted, where the owner "testified that he did not make regular inspections of the premises" but that he would go to the property "every day, once a week or whatnot" and would repair "anything that need[ed] to be fixed").

For these reasons, the evidence of Deloach's and Pollard's knowledge of the defect is not "plain, palpable, and undisputed." *Johnson Street Properties*, 302 Ga. at 57 (1) (a) (iii) (citation and punctuation omitted). Instead, "there is an issue of fact as to whether [Deloach] had constructive knowledge of the [failing fasteners and/or broken risers that caused the step to break]. For the same reason, there is an issue of fact as to whether [Pollard] reasonably could have known of such a defect even if [she] did traverse the [staircase] on a regular occasion." *Gaskins*, 334 Ga. App. at 645. So

Deloach is not entitled to summary judgment on Pollard's premises liability claim under OCGA § 51-3-1.

*Judgment reversed. Mercier, C. J., and Rickman, J., concur.*